Nos. 16-1459 and 16-1694

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**KEVIN JOHNSON and**
**TYLER LANG,**                                      **Defendants-**
 **Appellants.**

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 14 CR 390
The Honorable Judge Amy J. St. Eve

**JOINT BRIEF AND REQUIRED SHORT APPENDIX**
**OF DEFENDANTS-APPELLANTS**
**KEVIN JOHNSON and TYLER LANG**

**Center for Constitutional Rights**
Rachel Meeropol
666 Broadway, 7th Floor
New York, New York 10012
(212) 614-6432
*Attorney for Defendant-Appellant,*
*Kevin Johnson*

**The People's Law Office**
Michael E. Deutsch
1180 North Milwaukee Avenue
Chicago, Illinois 60622-4019
(773) 235-0070
*Attorney for Defendant-Appellant,*
*Kevin Johnson*

**Federal Defender Program**
Carol A. Brook,
Executive Director
By: Geoffrey M. Meyer
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8326
*Attorney for Defendant-*
*Appellant, Tyler Lang*

## RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for defendant-appellant Kevin Johnson, furnishes the following list in compliance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1:

1. The full name of the only party represented is Kevin Johnson.

2. The defendant-appellant is a natural person and not a corporation.

3. The Center for Constitutional Rights and the People's Law Office, by attorneys Rachel Meeropol and Michael Deutsch, appeared for the defendant-appellant in the District Court, and are the only attorneys expected to appear in this Court on behalf of this defendant.

*/s/Rachel Meeropol*
Rachel Meeropol

Dated: May 9, 2016

# RULE 26.1 DISCLOSURE STATEMENT

The undersigned, counsel of record for defendant-appellant Tyler Lang, furnishes the following list in compliance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1:

1.  The full name of the only party represented is Tyler Matthew Lang.

2.  The defendant-appellant is a natural person and not a corporation.

3.  The Federal Defender Program, by its attorneys Geoffrey M. Meyer and Carol A. Brook, appeared for the defendant-appellant in the District Court, and are the only attorneys expected to appear in this Court on behalf of this defendant.


                                        */s/Geoffrey M. Meyer*
                                        Geoffrey M. Meyer

Dated:  May 9, 2016

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... iii

Jurisdictional Statement of Kevin Johnson ............................................... 1

Jurisdictional Statement of Tyler Lang...................................................... 1

Statement of Issues Presented for Review ................................................ 2

Statement of the Case ................................................................................. 3

Statement of the Facts ................................................................................ 5

Summary of the Argument.......................................................................... 6

Argument ...................................................................................................... 9

   I.     Standard of Review ......................................................................... 9

  II.    The AETA is Substantially Overbroad ......................................... 9

    A.   The AETA's Prohibition on "Damaging or Causing the Loss of Any Real or Personal Property" is Overbroad............................. 12

      i.   Subsection (a)(2)(A) Prohibits Causing a Business to Lose Money or Profit ...................................................................... 12

     ii.   The District Court's Interpretation of (a)(2)(A) to Exclude Causing "Economic Damage" is Erroneous and Unsupported ................................. 16

    iii.   Criminalizing Causing a Business to Spend Money or Lose Profit Criminalizes Speech ...................................................... 22

    B.   The AETA's Rules of Construction Do Not Save it from Unconstitutional Overbreadth...................................................... 24

    C.   The AETA's Conspiracy / Attempt Provision Criminalizes Opposition to Businesses that use Animal Products ........................................... 28

 III.    The AETA is Void for Vagueness ................................................. 34

    A.   Appellants' Facial Challenge to the AETA is Proper ................... 35

B.    A Statute's Susceptibility to Arbitrary and Discriminatory Enforcement Is an Independent Basis for Finding a Violation of Due Process ..................... 37

IV.    The AETA's Punishment of Property Damage as a "Terrorist" Offense Violates Substantive Due Process on its Face and As Applied to Appellants' Alleged Conduct ............................................................................................ 42

A.    Appellants Have a Non-Fundamental Liberty Interest in Avoiding Being Labeled "Terrorists" ........................................................................................ 43

B.    Punishing Non-Violent Property Damage as "Terrorism" is Irrational and Serves no Legitimate Government Purpose ................................................. 46

Conclusion .......................................................................................................... 51

# TABLE OF AUTHORITIES

## CASES

*ACLU of N.M. v. City of Albuquerque,*
137 P.3d 1215 (N.M. Ct. App. 2006)... ................................................................ 44 n.15

*Act Now to Stop War & End Racism Coal. v. District of Columbia,*
905 F. Supp. 2d 317 (D.D.C. 2012) .................................................................. 39-40

*Ali v. Fed. Bureau of Prisons,* 552 U.S. 214 (2008)..................................................... 20

*Aref v. Holder,* 953 F. Supp. 2d 133 (D.D.C. 2013) ................................................ 44-45

*Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002)...................................................... 9

*Bates v. United States,* 522 U.S. 23 (1997) ................................................................. 17

*Bell v. Keating,* 697 F.3d 445 (7th Cir. 2012) ....................................................... 37, 42

*Blum v. Holder,* 744 F.3d 790 (1st Cir. 2014) ............................................................. 30

*Brandenburg v. Ohio,* 395 U.S. 444 (1969) ................................................................. 27

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973)......................................................... 9, 34

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,*
230 F.3d 934 (7th Cir. 2000) .......................................................................... 31-32

*City Council v. Taxpayers for Vincent,* 466 U.S. 789 (1984) ......................................... 9

*City of Chicago v. Morales,* 527 U.S. 41 (1999)...................................................... 35-36

*City of Houston v. Hill,* 482 U.S. 451 (1987) ............................................................... 9

*CISPES (Comm. in Solidarity with the People of El Sal.) v. FBI,*
770 F.2d 468 (5th Cir. 1985) .......................................................................... 25, 26

*Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363 (2000).................................... 34

*CSX Transp., Inc. v. Ala. Dep't of Revenue,* 562 U.S. 277 (2011) .............................. 22

*Desertrain v. City of Los Angeles,* 754 F.3d 1147 (9th Cir. 2014)........................... 36, 41

*Doe v. City of Lafayette*, 377 F.3d 757 (7th Cir. 2004)................................................ 46

*Doe v. Mich. Dep't of State Police*, 490 F.3d 491 (6th Cir. 2007) ................................ 44

*Dorman v. Satti*, 862 F.2d 432 (2d Cir. 1988)............................................................. 32

*Duncan v. Walker*, 533 U.S. 167 (2001)............................................................. 17-18, 20

*Fisher v. King*, 232 F.3d 391 (4th Cir. 2000) ............................................................. 25

*Gooding v. Wilson*, 405 U.S. 518 (1972) ..................................................................... 9

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................. 36-37

*Greater Chi. Combine & Ctr. v. City of Chicago*,
431 F.3d 1065 (7th Cir. 2005) ....................................................................... 46

*Harrison v. PPG Indus.*, 446 U.S. 578 (1980) ........................................................ 19-20

*Hayden v. Greensburg Cmty. Sch. Corp.*,
743 F.3d 569 (7th Cir. 2014) .................................................................... 42-43, 46

*Hill v. Colorado*, 530 U.S. 703 (2000) ................................................................. 37, 41

*Hirschkop v. Snead*, 594 F.2d 356  (4th Cir. 1979) ................................................. 32-33

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ..................................... 25 n.9

*Johnson v. United States*, 135 S. Ct. 2551 (2015)......................................... 35, 37, 42

*JWJ Indus., Inc. v. Oswego County*, No. 5:09-cv-740,
2012 U.S. Dist. LEXIS 164279 (N.D.N.Y. Nov. 16, 2012)......................................... 40

*Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999)............................................................. 9

*Kolender v. Lawson*, 461 U.S. 35 (1983) ....................................................... 35, 37-38

*Kucharek v. Hanaway*, 902 F.2d 513 (7th Cir. 1990)................................................. 38

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ....................................... 25, 27

*Looney v. Com.*, 133 S.E. 753 (Va. 1926) ................................................................. 25

*Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996)................................................. 12

*Metro Produce Distribs., Inc. v. City of Minneapolis*,
473 F. Supp. 2d 955 (D. Minn. 2007) ................................................................. 38, 39

*Mississippi v. Louisiana*, 506 U.S. 73 (1992) ........................................... 12

*Moffitt v. Commonwealth*, 360 S.W.3d 247 (Ky. Ct. App. 2012) ........................ 44 n.15

*NAACP v. Button*, 371 U.S. 415 (1963) ...................................................... 28

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................. 27-28

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ...................................... 9

*Nitzberg v. Parks*, 525 F.2d 378 (4th Cir. 1975) .......................................... 33

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ............................ 35, 37, 42

*People v. Johnson*, 870 N.E.2d 415 (Ill. 2007) .................................... 44 n.15

*People v. Knox*, 903 N.E.2d 1149 (N.Y. 2010) .......................................... 43-44,, 44 n.15

*People v. Morales*, 20 N.Y.3d 240 (2012) ...................................................... 50

*People v. Phillip C.*, 847 N.E.2d 801 (Ill. App. Ct. 2006) ................................... 44 n.15

*Radiation Sterilizers, Inc. v. United States*,
867 F. Supp. 1465 (E.D. Wash. 1994) ................................................................ 15-16

*Reno v. Flores*, 507 U.S. 292 (1993) ........................................................... 43

*Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012) ...................................... 45

*Rubin v. City of Santa Monica*, 823 F. Supp. 709 (C. D. Ca. 1993) ........................... 26

*Smith v. Goguen*, 415 U.S. 566 (1974) ...................................................... 38

*Spence v. Washington*, 418 U.S. 405 (1974) ............................................... 27

*State v. Machholz*, 574 N.W.2d 415 (Minn. 1998) ..................................... 25

*State v. Moyle*, 705 P.2d 740 (Or. 1985) .................................................. 26, 27

*State v. Reine*, No. 19157, 2003 Ohio App. LEXIS 52
(Ohio App. Jan. 10, 2003) ............................................................. 44 n.15, 50

*State v. Robinson*, 873 So. 2d 1205 (Fla. 2004)............................. 44, 44 n.15

*State v. Smith*, 780 N.W.2d 90 (Wis. 2010) ......................................... 44 n.15

*State v. Yocum*, 759 S.E.2d 182 (W. Va. 2014).......................................... 47

*Swank v. Smart*, 898 F.2d 1247 (7th Cir. 1990) ...................................... 46

*Thornhill v. Alabama*, 310 U.S. 88 (1940) ........................................ 32, 33

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*,
540 F.3d 957 (9th Cir. 2008) ..................................................................... 32

*United States v. Buddenberg*, No. 09-CR-00263,
2009 U.S. Dist. LEXIS 100477 (N.D. Cal. Oct. 28, 2009)................... 11, 30

*United States v. Fullmer*, 584 F.3d 132 (3d Cir. 2009) ............... 14, 14 n.3, 15

*United States v. Lanning*, 723 F.3d 476 (4th Cir. 2013) ........................... 41

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995)......... 24

*United States v. O'Brien*, 391 U.S. 367 (1968)......................................... 27

*United States v. Rodgers*, 755 F.2d 533 (7th Cir. 1985)....................... 35-36

*United States v. Stevens*, 559 U.S. 460 (2010) .................................. 10, 23

*United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) ............... 38-39

*United States v. Viehl*, No. 09-CR-119, 2010 U.S. Dist. LEXIS 2264
(D. Utah Jan. 12, 2010) ........................................................................... 49

*United States v. Walton*, 36 F.3d 32 (7th Cir. 1994) ............................... 36

*Van Harken v. City of Chicago*, 906 F. Supp. 1182 (N.D. Ill. 1995).......... 43

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988)............................ 24

*Virginia v. Black*, 538 U.S. 343 (2003) ................................................... 27

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001)...................... 25

*Wroblewski v. Washburn*, 965 F.2d 452 (7th Cir. 1992).............................................. 46


**STATUTES**

4 U.S.C. § 107............................................................................................. 13 n.2

7 U.S.C. § 941............................................................................................. 13 n.2

7 U.S.C. § 3318........................................................................................... 13 n.2

11 U.S.C. § 541........................................................................................... 13 n.2

11 U.S.C. § 722........................................................................................... 13 n.2

12 U.S.C. § 1464......................................................................................... 13 n.2

12 U.S.C. § 1768......................................................................................... 13 n.2

12 U.S.C. § 2290......................................................................................... 13 n.2

15 U.S.C. § 78kkk....................................................................................... 13 n.2

15 U.S.C. § 381........................................................................................... 13 n.2

15 U.S.C. § 2301......................................................................................... 13 n.2

15 U.S.C. § 6611......................................................................................... 13 n.2

18 U.S.C. § 18............................................................................................. 29 n.11

18 U.S.C. § 32............................................................................................. 29 n.11

18 U.S.C. § 33............................................................................................. 29 n.10

18 U.S.C. § 37............................................................................................. 29 n.12

18 U.S.C. § 38............................................................................................. 29 n.11

18 U.S.C. § 43.............................................................................................*passim*

18 U.S.C. § 81.................................................................................................. 29 n.10

18 U.S.C. § 115 ................................................................................................... 4

18 U.S.C. § 175.............................................................................................. 29 n.10

18 U.S.C. § 247.............................................................................................. 29 n.10

18 U.S.C. § 248.............................................................................................. 29 n.10

18 U.S.C. § 351.............................................................................................. 29 n.11

18 U.S.C. § 609.............................................................................................. 29 n.10

18 U.S.C. § 793.............................................................................................. 29 n.10

18 U.S.C. § 794.............................................................................................. 29 n.10

18 U.S.C. § 831.............................................................................................. 29 n.11

18 U.S.C. § 832.............................................................................................. 29 n.10

18 U.S.C. § 836.............................................................................................. 29 n.10

18 U.S.C. § 924.............................................................................................. 29 n.10

18 U.S.C. § 930.............................................................................................. 29 n.10

18 U.S.C. § 1091............................................................................................ 29 n.12

18 U.S.C. § 1201............................................................................................ 29 n.11

18 U.S.C. § 1203............................................................................................ 29 n.10

18 U.S.C. § 1204............................................................................................ 29 n.10

18 U.S.C. § 1262............................................................................................ 29 n.10

18 U.S.C. § 1362............................................................................................ 29 n.10

18 U.S.C. § 1363............................................................................................ 29 n.10

18 U.S.C. § 1365............................................................................................ 29 n.10

18 U.S.C. § 1368............................................................................................29 n.10

18 U.S.C. § 1466A.........................................................................................29 n.12

18 U.S.C. § 1470............................................................................................29 n.10

18 U.S.C. § 1505............................................................................................29 n.10

18 U.S.C. § 1512...............................................................................29 n.10, 29 n.12

18 U.S.C. § 1513.................................................................13 n.2, 29 n.10, 29 n.12

18 U.S.C. § 1751............................................................................................29 n.11

18 U.S.C. § 1791............................................................................................29 n.10

18 U.S.C. § 1831............................................................................................29 n.11

18 U.S.C. § 1832............................................................................................29 n.11

18 U.S.C. § 1951............................................................................................29 n.10

18 U.S.C. § 1959............................................................................................29 n.10

18 U.S.C. § 2071............................................................................................29 n.10

18 U.S.C. § 2114...................................................................................................13

18 U.S.C. § 2118............................................................................................29 n.10

18 U.S.C. § 2119............................................................................................29 n.10

18 U.S.C. § 2153............................................................................................29 n.10

18 U.S.C. § 2154............................................................................................29 n.10

18 U.S.C. § 2155............................................................................................29 n.10

18 U.S.C. § 2241...............................................................................29 n.10, 29 n.12

18 U.S.C. § 2242............................................................................................29 n.12

18 U.S.C. § 2251............................................................................................29 n.10

18 U.S.C. § 2260 ................................................................................ 29 n.10

18 U.S.C. § 2275 ................................................................................ 29 n.10

18 U.S.C. § 2280 ................................................................................ 29 n.11

18 U.S.C. § 2281 ................................................................................ 29 n.11

18 U.S.C. § 2291 ................................................................................ 29 n.11

18 U.S.C. § 2332 ................................................................................ 29 n.10

18 U.S.C. § 2332b ........................................................................ 48, 48 n.17

18 U.S.C. § 2332B ............................................................................. 29 n.11

18 U.S.C. § 2332F ............................................................................. 29 n.11

18 U.S.C. § 2339(a) ........................................................................... 29 n.10

18 U.S.C. § 2339A ............................................................................. 29 n.10

18 U.S.C. § 2339B ............................................................................. 29 n.10

18 U.S.C. § 2339C ............................................................................. 29 n.11

18 U.S.C. § 2385 ................................................................................ 29 n.10

18 U.S.C. § 2388 ................................................................................ 29 n.10

18 U.S.C. § 2421 ................................................................................ 29 n.10

18 U.S.C. § 2422 ................................................................................ 29 n.10

18 U.S.C. § 2423 ................................................................................ 29 n.10

18 U.S.C. § 2425 ................................................................................ 29 n.10

18 U.S.C. § 3231 .......................................................................................... 1

18 U.S.C. Appx § 3A1.4 .................................................................... 48 n.17

19 U.S.C. § 81o ................................................................................... 13 n.2

22 U.S.C. § 2697 ................................................................................ 13 n.2

26 U.S.C. § 48 .................................................................................... 13 n.2

26 U.S.C. § 48C .................................................................................. 13 n.2

26 U.S.C. § 110 .................................................................................. 13 n.2

26 U.S.C. § 144 .................................................................................. 13 n.2

26 U.S.C. § 168 .................................................................................. 13 n.2

26 U.S.C. § 170 .................................................................................. 13 n.2

26 U.S.C. § 199 .................................................................................. 13 n.2

26 U.S.C. § 263A ................................................................................ 13 n.2

26 U.S.C. § 274 .................................................................................. 13 n.2

26 U.S.C. § 408 .................................................................................. 13 n.2

26 U.S.C. § 543 .................................................................................. 13 n.2

26 U.S.C. § 1298 ................................................................................ 13 n.2

26 U.S.C. § 1397C ........................................................................ 13-14 n.2

26 U.S.C. § 2503 .......................................................................... 13-14 n.2

26 U.S.C. § 2522 .......................................................................... 13-14 n.2

26 U.S.C. § 6323 .......................................................................... 13-14 n.2

26 U.S.C. § 6334 .......................................................................... 13-14 n.2

28 U.S.C. § 1291................................................................................ 1, 2

28 U.S.C. § 2254(i)............................................................................... 18

28 U.S.C. § 2261(e)............................................................................. 18

29 U.S.C. § 1302.......................................................................... 13-14 n.2

31 U.S.C. § 6306...................................................................................13-14 n.2

42 U.S.C. § 238.....................................................................................13-14 n.2

42 U.S.C. § 2014........................................................................................... 15

42 U.S.C. § 4622..................................................................................13-14 n.2

Animal Enterprise Protection Act, 18 U.S.C. § 43 (2002) ............................... 3 n.1, 14

Animal Enterprise Terrorism Act, Pub. L.109-374, 120 STAT. 2652 (2006) .............. 43

Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801...................................... 48, 53

The Homeland Security Act of 2002, Pub. L. No. 107-296,
116 Stat. 2135 (2002) ...................................................................................... 48

USA Patriot Act, 18 U.S.C. § 2331(5).............................................................. 48

## OTHER AUTHORITIES

152 Cong. Rec. E2100 (Nov. 13, 2006)........................................................... 24

BLACK'S LAW DICTIONARY (10th ed. 2014) ....................................................... 12-13, 31

Congressional Research Service, The Domestic Terrorist Threat: Background and
Issues for Congress, Jan. 17, 2013, *available at*
https://www.fas.org/sgp/crs/terror/R42536.pdf .................................................. 49 n.18

Eriq Gardner, *SeaWorld Hit with Lawsuit over Failure to Advise on 'Blackfish'
Impact*, THE HOLLYWOOD REPORTER, September 10, 2014................................... 22 n.4

John Greenman, *On Communication*, 106 MICH. L. REV. 1337 (2008)...................... 27

Helios Global, Inc. for Department of Homeland Security, Ecoterrorism:
Environmental and Animal Rights Militants in the United States, Universal
Adversary Dynamic Threat Assessment, May 7, 2008, *available at*
https://file.wikileaks.org/file/dhs-ecoterrorism-in-us-2008.pdf .......................... 49 n.18

Indictment, *United States v. Buddenberg*, No. 15-cr-01928 (S.D. Cal. 2015),
ECF No. 1 ................................................................................................... 49

Initial Brief, Appellee-Respondent, *United States v. Fullmer*, No. 06-4211, 2008 U.S. 3d Cir. Briefs LEXIS 1334 (3d Cir. June 17, 2008)........................ 14-15 n.3

WALTER LAQUEUR, THE NEW TERRORISM (1999)........................................................... 47

Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), *Blum v. Holder*, No. 11-cv-12229 (D. Mass. Mar. 9, 2012), ECF No. 12 ...................................................................................................... 30, 41

MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed. 2003) .................................... 31

Nicholas Perry, *The Numerous Federal Legal Definitions of Terrorism: The Problem of Two Many Grails*, 30 J. LEGIS. 249 (2004) ........................................ 47

Order Adopting Findings and Recommendation, *United States v. Buddenberg*, No. 15-cr-01928 (S.D. Cal. 2015), ECF No. 74 and 75........................................ 31 n.13

Tony Perry, *Amid 'Blackfish' Backlash, SeaWorld to Expand Orca Environments*, LA. TIMES, August 14, 2014.................................................................... 22 n.5

Plea Agreement, *United States v. Demuth*, No. 09-CR-117 (S.D. Iowa Sep. 13, 2010), ECF No. 174....................................................................... 49

Preliminary Trial Memorandum, *United States v. Buddenberg*, No. 15-cr-01928 (S.D. Cal. 2015), ECF No. 60 .................................................. 30-31, 34

Press Release, FBI San Francisco, Four Extremists Arrested for Threats and Violence Against UC Researchers, (Feb. 20, 2009), *available at* https://www.fbi.gov/sanfrancisco/press-releases/2009/sf022009.htm ........... 45-46 n.16

Press Release, Office of the United States Attorney Southern District of California, Animal Rights Activists Accused of Going on Cross-Country Spree Targeting Fur Industry, (July 24, 2015), *available at* https://www.fbi.gov/sandiego/press-releases/2015/animal-rights-activists-accused-of-going-on-cross-country-spree-targeting-fur-industry ................................................................ 45, 45 n.16

Seth Prince and Spencer Heinz, *Activists Look Beyond Fur Shop's Move*, THE OREGONIAN, November 30, 2006................................................................. 23 n.7

ALEX P. SCHMID, POLITICAL TERRORISM: A RESEARCH GUIDE TO CONCEPTS, THEORIES, DATABASES AND LITERATURE (1983) ........................................................ 47

Sudha Setty, *What's In a Name? How Nations Define Terrorism Ten Years After 9/11*, 33 U. PA. J. INT'L L. 1 (2011)................................................................. 47

Kim Severson, *Upton Sinclair, Now Playing on YouTube*,
N.Y. TIMES, March 12, 2008 .................................................................................. 24 n.8

Austin Siegemund-Broka, *'Blackfish' Director Talks SeaWorld Revenue Drop:*
*"People Are Truly Willing to Change Ethically"*,
THE HOLLYWOOD REPORTER, August 20, 2014 ...................................................... 23 n.6

LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW (1st ed. 1978) ........................ 25

## JURISDICTIONAL STATEMENT OF KEVIN JOHNSON

On June 26, 2015, Appellant Kevin Johnson entered into a conditional plea of guilty to one count of conspiring to travel in interstate commerce for the purpose of damaging an animal enterprise, in violation of the Animal Enterprise Terrorism Act (AETA), 18 U.S.C. § 43(a)(2)(C). Plea Agreement, Dist. ECF No. 124. The District Court had jurisdiction over the case under 18 U.S.C. § 3231. On February 29, 2016 judgment was entered against Johnson, and he was sentenced to 36 months imprisonment, with 14 months credit for his state court sentence.  A23, 24.

On March 2, 2016 Johnson filed a Notice of Appeal from the District Court's order of March 5, 2015, denying Appellants' motion to dismiss their indictment based on the AETA's facial unconstitutionality.  Notice of Appeal, Dist. ECF No. 152. This Court has jurisdiction under 28 U.S.C. § 1291.

## JURISDICTIONAL STATEMENT OF TYLER LANG

On July 22, 2015, Appellant Tyler Lang entered a conditional plea of guilty to one count of conspiring to travel in interstate commerce for the purpose of damaging an animal enterprise, in violation of the AETA, 18 U.S.C. § 43(a)(2)(C). Plea Agreement, Dist. ECF No. 126. The District Court had jurisdiction over the case under 18 U.S.C. § 3231. On March 23, 2016, the District Court sentenced Lang to time considered served and one year of supervised release. The initial judgment entered the same day. Judgment in a Criminal Case, Dist. ECF No. 161. For reasons unrelated to this appeal, the District Court entered an amended judgment correcting a clerical error on April 5, 2016. A31.

On March 30, 2016, Lang filed a Notice of Appeal from the District Court's

order of March 5, 2015, denying Appellants' motion to dismiss their indictment

based on the AETA's facial unconstitutionality. Notice of Appeal, Dist. ECF No. 163

This Court has jurisdiction under 28 U.S.C. § 1291. Johnson and Lang's appeals

were consolidated by this Court on March 31, 2016. Order, App. ECF No. 4.


## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err in holding that the Animal Enterprise

Terrorism Act ("AETA"), 18 U.S.C. § 43(a), is not facially overbroad in violation of

the First Amendment, given that it prohibits protected speech and conduct that

cause loss to businesses that use or sell animal products?

2.    Did the District Court err in holding that the AETA is not facially void

for vagueness, given that its broad application to all interstate property crimes

committed against businesses which use or sell animal products invites and has

resulted in discriminatory and arbitrary enforcement against animal rights

activists?

3.    Did the District Court err in holding that the AETA's punishment of

non-violent property crime as a "terrorist" offense is rationally related to a

legitimate government purpose, and thus does not violate Substantive Due Process,

both on its face, and as applied to Appellants' conduct?

## STATEMENT OF THE CASE

Johnson and Lang were indicted in 2014 for one count of conspiracy to damage and interfere with the operations of an animal enterprise, and one count of damaging or causing the loss of real or personal property of an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(A) and (a)(2)(C). A01. On November 6, 2014, Johnson and Lang moved to dismiss the indictment, arguing that the AETA is facially overbroad and vague, and violates substantive due process on its face and as applied to them.  The Honorable Amy J. St. Eve denied their motion on March 5, 2015.  A04.  Johnson and Lang subsequently entered conditional pleas of guilty to one count of conspiring to travel in interstate commerce for the purpose of damaging an animal enterprise, in violation of 18 U.S.C. § 43(a). *See* Johnson Plea Agreement, Dist. ECF No. 124, at ¶ 5-6, 20; Lang Plea Agreement, Dist. ECF No. 126, at ¶ 5-6, 20. Their plea agreements reserved the right to appeal the District Court's Order of March 5, 2015, denying Appellants' motion to dismiss the indictment based on the AETA's facial unconstitutionality. Dist. ECF Nos. 124 and 126 at ¶20, see also, Memorandum Opinion and Order, A04 This appeal follows.

The AETA was signed into law on November 26, 2006.[1] The offense provision is as follows:

> (a)  Offense. Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce--
>
> (1)  for the purpose of damaging or interfering with the operations of an animal enterprise; and

---

[1] It amended and replaced the Animal Enterprise Protection Act of 2002. *See* 18 U.S.C. § 43(a) (2002), *see also, infra,* section II.A.i.

(2)  in connection with such purpose--

    (A)  intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise;

    (B)  intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family (as defined in section 115 [18 USCS § 115]) of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or

    (C)  conspires or attempts to do so;

shall be punished as provided for in subsection (b).

18 U.S.C. § 43(a).

The law defines "animal enterprise" incredibly broadly, as essentially any entity that uses animals or animal products in any way. 18 U.S.C. § 43(d)(1). Penalties under the AETA depend on the amount of "economic damage" and/or bodily injury that result from a substantive violation. *Id.* at § 43(b). Economic damage is defined, as, *inter alia,* "the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise," but "does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise." *Id.* at § 43(d)(3).

4

The AETA includes a First Amendment "rule of construction." Under that rule, the AETA shall not "be construed . . . to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." *Id.* at § 43(e)(1).

## STATEMENT OF THE FACTS

Appellants were charged with two AETA counts: a conspiracy to travel in interstate commerce with the purpose of damaging or interfering with an animal enterprise, in violation of subsection (a)(2)(C) of the AETA (to which they pled guilty), and traveling in interstate commerce for the purpose of damaging and interfering with the operations of an animal enterprise, and in connection with that purpose, intentionally damaging and causing the loss of real and personal property under by an animal enterprise. *See* A01, Johnson Plea Agreement, Dist. ECF No. 124 at ¶5, Lang Plea Agreement, Dist. ECF No. 126 at ¶5.

As acknowledged in their guilty pleas, Appellants released approximately 2000 minks from their cages, destroyed the minks' breeding cards (necessary for their sale to a furrier), poured caustic substances over two farm vehicles, and spray painted the words "Liberation is Love" on a barn. *Id.* at ¶6. They were on their way to a fox farm in Illinois, with plans to damage the farm, when they were arrested by local police. *Id.* That arrest led to state charges—possession of burglary tools—for which Johnson and Lang were sentenced to 30 months' imprisonment and 30

months' conditional discharge, respectively. *Johnson Plea Agreement, Dist. ECF No. 124* at p.7, Lang Plea Agreement, Dist. ECF No. 126 at p.6-7.

Appellants admitted to having caused between $120,000 and $200,000 worth of damage, including physical damage to the property, the replacement cost of the minks, and the lost profits from the farm's inability to sell the minks at their fair value. *Id.* at p.4. For the AETA conspiracy, Johnson was sentenced to 36 months imprisonment, with a 14 month credit for his state court sentence. A23. Lang was sentenced to three months, time served. A34.

## SUMMARY OF THE ARGUMENT

1. Subsection (a)(2)(A) of the AETA is substantially overbroad, in violation of the First Amendment, as it prohibits "damage[ing] or caus[ing] the loss of any real or personal property (including animals or records) used by an animal enterprise." Because "any . . . personal property" includes money and intangible property like business reputation and profit, the provision prohibits causing a business to expend money (for example, on increased security) or lose profit. This unconstitutionally prohibits a substantial amount of protected speech.

The District Court disregarded the plain meaning of the provision, holding that "damage[ing] or cau[sing] the loss of any real or personal property" must be read to exclude causing "economic damage," because economic damage is used to calculate penalty, and the phrase is not mentioned in the liability provision. A09-10. The District Court also relied on the AETA's rule of construction—stating that it

should not be construed to "prohibit any expressive conduct" protected by the First Amendment—to support this interpretation. *Id.* at A12-13.

The District Court's statutory interpretation is erroneous. The plain meaning of "damage[ing] or caus[ing] the loss of *any* real or personal property" is much broader than, and logically includes, causing "economic damage," so Congress's exclusion of the words "economic damage" from (a)(2)(A) cannot legitimate interpreting the provision to *only* prohibit causing physical harm to tangible property. All that limits application of this prohibition to protected speech and expressive conduct is the AETA's broad First Amendment exception, but precedent is clear that a rule of construction cannot save an otherwise invalid statute.

2. Subsection (a)(2)(C) of the AETA is also substantially overbroad, as it punishes conspiracy to travel in interstate commerce with the purpose of damaging or interfering with an animal enterprise, and thus outlaws *all* interstate protest and advocacy against businesses that use animal products. While prior courts have interpreted (a)(2)(C) counter-textually, to refer back to subsections (a)(2)(A) or (a)(2)(B), the Government has since changed its litigation position, and has begun interpreting the statute textually, giving rise to a serious overbreadth problem, and requiring a fresh analysis of this issue.

3. Regardless of whether it substantially burdens speech, the AETA is facially void for vagueness because its enormous breadth—federalizing all interstate property crimes against businesses that use or sell animal products— invites discriminatory enforcement. The District Court disagreed, holding that the

7

AETA clearly defines the conduct it prohibits, thus its broad reach "does not lead to 'arbitrary and erratic arrests and convictions.'" A17. But the vagueness doctrine operates on two separate and independent theories; regardless of whether the AETA's reach is clear, the immense breadth of its prohibition invites, and has actually resulted, in arbitrary and discriminatory enforcement. While thousands must violate the prohibition every year, *only* animal rights activists have ever been charged with violating the law.

4. Finally, the AETA also violates substantive due process, both facially and as applied to Appellants' criminal conduct, because non-violent damage to property cannot rationally be punished as Animal Enterprise *Terrorism*. The District Court assumed, without deciding, that Appellants have a non-fundamental liberty interest in avoiding being labelled "terrorists," as this could impact their conditions of confinement in the Bureau of Prisons. However, the Court held that the terrorism label survives rational basis review, as Congress' motivation in passing the law appears to have been prevention of violent acts by animal activists.

This is erroneous. The AETA's terrorism label matters: it carries significant stigma, and renders Appellants eligible for placement in a "Communication Management Unit." Attaching this stigmatizing label to a law that primarily prohibits damage to property, and has never once been used to prosecute violence, is not rational. Non-violent property damage is not terrorism.

# ARGUMENT

## I.     Standard of Review

The District Court's legal conclusions regarding the constitutionality of the Animal Enterprise Terrorism Act are subject to *de novo* review. *Karlin v. Foust*, 188 F.3d 446, 457 (7th Cir. 1999).

## II.     The AETA is Substantially Overbroad

The overbreadth doctrine protects individuals who "may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 521 (1972). "[W]here conduct and not merely speech is involved," overbreadth must be substantial to result in invalidity. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). A facial challenge lies where there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court," *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984), or a "substantial risk that application of the provision will lead to the suppression of speech," *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). *See also Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 256 (2002) (finding law overbroad where it "covers materials beyond the categories" of child pornography and obscenity). Criminal statutes must be examined particularly carefully. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

The first step in overbreadth analysis is to interpret the challenged statute.

*United States v. Stevens*, 559 U.S. 460, 474 (2010). As at issue here, the AETA's

offense provision is as follows:

> (a) Offense.—Whoever travels in interstate or foreign commerce, or uses or
> causes to be used the mail or any facility of interstate or foreign commerce--
>> (1) for the purpose of damaging or interfering with the operations of an
>> animal enterprise; and
>> (2) in connection with such purpose--
>>> (A) intentionally damages or causes the loss of any real or
>>> personal property (including animals or records) used by an
>>> animal enterprise, or any real or personal property of a person or
>>> entity having a connection to, relationship with, or transactions
>>> with an animal enterprise;
>>> . . . or
>>> (C) conspires or attempts to do so;
> shall be punished as provided in subsection (b).

18 U.S.C. § 43 (a).

The AETA's overbreadth is a function of two problems with the statute's

drafting. First, as explained below, subsection (a)(2)(A) is substantially overbroad

because it prohibits damaging or causing the loss of *any* property used by an animal

enterprise. "Property" as commonly defined includes money and intangibles; thus,

the provision makes it a federal crime to cause a business to spend money or lose

profit. Second, the AETA's conspiracy / attempt provision—(a)(2)(C)—is incredibly

overbroad, because it punishes any interstate plan undertaken "for the purpose of

damaging or interfering with the operations of an animal enterprise." This

criminalizes all interstate animal rights advocacy.

Together, the subsections reach a *vast* amount of protected speech and

expressive conduct. For example, animal rights activists commonly seek to

publicize the horrific treatment of animals at certain businesses and organize community campaigns in opposition to such treatment. Such businesses are certainly "animal enterprises." Publicizing and community organizing inevitably involves the use of a facility of interstate commerce; and activists have the intent of "damaging" or interfering with corporations' operations—the purpose of their advocacy is to cause businesses to suffer economically and be forced either to change their practices or to cease doing business entirely because of public outrage. 18 U.S.C. § 43(a), *see also United States v. Buddenberg,* No. 09-CR-00263, 2009 U.S. Dist. LEXIS 100477, *23 (N.D. Cal. Oct. 28, 2009) (noting that "[d]efendants are correct that a wide variety of expressive and non-expressive conduct might plausibly be undertaken with the purpose of interfering with an animal enterprise—a public protest, for example …").

Under subsection (b)(1)(A), a conspiracy or attempt can be punished by a fine or a years imprisonment regardless of whether the plan comes to fruition, or has any impact on the business. And under (a)(2)(A), if a targeted business spends money in response to this organizing effort or suffers lost profits, the activists will thereby have "intentionally damage[ed] or cause[d] the loss of . . . personal property . . . used by an animal enterprise." 18 U.S.C. § 43(a)(2)(A). It is not hard to imagine this result. Animal enterprises may spend more money on security as a result of public demonstrations. Disgusted consumers may stop purchasing goods manufactured by animal enterprises. Some members of the public may be so enraged by what they learn from animal rights activists' campaigns that they

respond by targeting a company with harassing and threatening conduct, be it legal or illegal.

As shown below, these examples are no stretch.  The plain language of the provisions, their statutory context, and their history of enforcement all demonstrate that the AETA unconstitutionally burdens a substantial amount of protected speech and expressive conduct and must be struck down as overbroad.

### A. The AETA's Prohibition on "Damaging or Causing the Loss of Any Real or Personal Property" is Overbroad

Subsection (a)(2)(A) of the AETA prohibits damaging or causing the loss of any real or personal property (including animals or records) used by an animal enterprise. This sweeps within its prohibition a substantial amount of protected speech.

### i.   Subsection (a)(2)(A) Prohibits Causing a Business to Lose Money or Profit

The correct interpretation of a statute begins with the plain meaning of its terms. *See, e.g., Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485-86 (1996) (interpreting "imminent" by beginning with dictionary definition); *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992) (beginning and ending with dictionary definition to resolve plain meaning of "exclusive").

Subsection (a)(2)(A) of the AETA applies to one who "damages or causes the loss of *any* real or personal property" used by an animal enterprise. (Emphasis added). Black's Law Dictionary defines "personal property" as "[a]ny moveable or intangible thing that is subject to ownership and not classified as real property."

BLACK'S LAW DICTIONARY 1412 (10th ed. 2014). Under this definition, money and profit are both property. This is consistent with the treatment of money as a form of property under other federal statutes, *see e.g.,* 18 U.S.C.A. § 2114(a) ("A person who assaults any person having lawful charge, control, or custody of any mail matter or of *any money or other property* of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States . . . shall, for the first offense, be imprisoned not more than ten years") (emphasis added), as well as the explicit reference to "tangible" personal property in federal statutes where intangible property is not intended to be covered.[2] Thus, under the plain meaning of its terms, (a)(2)(A) prohibits causing a business to lose money or profit.

---

[2] *See, e.g.,* 4 U.S.C. § 107(a) (relating to taxation of property sold by United States); 7 U.S.C. § 941(c) (relating to taxation of Rural Telephone Bank); 7 U.S.C. § 3318(d) (relating to grants by Department of Agriculture); 11 U.S.C. § 541(b)(8) (relating to property in bankruptcy); 11 U.S.C. § 722 (relating to bankruptcy redemption); 12 U.S.C. § 1464(c)(2)(C) (relating to activity of federal savings associations); 12 U.S.C. § 1768 (taxation of federal credit unions); 12 U.S.C. § 2290(a) (taxation of Federal Financing Bank); 15 U.S.C. § 78kkk(e) (taxation of SIPC); 15 U.S.C. § 381(a)(1) (property subject to income tax); 15 U.S.C. § 2301(1) (defining consumer product); 15 U.S.C. § 6611(a)(2) (relating to tort damages in Y2K actions); 18 U.S.C. § 1513(b) (criminalizing causing damage or threatening damage to "tangible property of another person" for the purpose of preventing testimony of a witness at an "official proceeding"); 19 U.S.C. § 81o(e) (relating to ad valorem taxation); 22 U.S.C. § 2697(d) (relating to acceptance of gifts on behalf of the United States); 26 U.S.C. § 48(a)(5)(D) (relating to energy tax credit); 26 U.S.C. § 48C(c)(2) (relating to energy project tax credit); 26 U.S.C. § 110(c)(3) (relating to construction allowances); 26 U.S.C. § 144(a)(12)(C) (relating to tax exemption for qualified bonds); 26 U.S.C. § 168 (relating to depreciation of property); 26 U.S.C. § 170(a)(3) (relating to charitable deductions); 26 U.S.C. § 199(c)(5) (relating to calculation of income); 26 U.S.C. § 263A(b)(1) (relating to capitalization of certain expenses); 26 U.S.C. § 274(j)(3) (relating to employee achievement awards); 26 U.S.C. § 408(m)(2)(F) (defining "collectible" for tax purposes); 26 U.S.C. § 543(b) (relating to taxation of personal holding company income); 26 U.S.C. § 1298(d) (relating to special treatment of leased property); 26 U.S.C. § 1397C(d) (relating to definition of

This is exactly how the provision has been interpreted in the past. The AETA amended the Animal Enterprise Protection Act (AEPA), which included the same language. *See* 18 U.S.C. § 43(a)(2)(2002) (Whoever travels in interstates or foreign commerce . . . for the purpose of causing physical disruption to the functioning of an animal enterprise; and "*intentionally damages, or causes the loss of, any property (including animals or records) used by the animal enterprise* . . . shall be punished. . . .") (emphasis added).

In *United States v. Fullmer*, 584 F.3d 132, 159 (3d Cir. 2009), defendants urged that the AEPA's "damages, or causes the loss of, any property" provision should be interpreted to require causing physical harm to tangible property, and could *not* be applied to causing the loss of money or profit. The Third Circuit disagreed, holding that defendants caused the loss of property by increasing the target animal enterprise's business costs: the evidence showed that Huntingdon Life Sciences spent $15,000 on new computer software to better guard against defendants' electronic civil disobedience campaigns. *Id.*[3] The Third Circuit declined

---

enterprise zone business); 26 U.S.C. § 2503(g)(2) (relating to tax treatment of certain gifts); 26 U.S.C. § 2522(e) (same); 26 U.S.C. § 6323(b) (relating to property subject to tax liens); 26 U.S.C. § 6334(a)(13) (relating to property subject to levying); 29 U.S.C. § 1302(g) (relating to taxation of Pension Benefit Guaranty Corporation); 31 U.S.C. § 6306 (relating to authority of agencies to vest title in certain property); 42 U.S.C. § 238(d) (relating to acceptance of gifts on behalf of United States by Secretary of Health and Human Services); 42 U.S.C. § 4622(a)(2) (describing losses eligible for payment when agency displaces business or farm operation).

[3] The Third Circuit's description of this loss is admittedly somewhat opaque, it states that "Huntingdon had to pay $15,000 to replace computer equipment after a protest involving electronic civil disobedience," *Fullmer*, 584 F.3d at 159, which could be read to imply that Huntingdon's computers were damaged by the attack.

to expressly decide whether causing profit loss (without increased costs) would also have satisfied the AEPA's property-loss provision, but the court listed such losses as "loss of property" in response to a different defense argument. *See id* ("Defendants argue that the proper instruction would have required the jury to find that Defendants *actually caused* a 'loss of property' in excess of $10,000 . . . The government presented ample evidence at trial that Defendants' protest activity directed at Huntingdon actually caused Huntingdon a loss well over $10,000 . . . electronic civil disobedience directed toward Huntingdon cost the company $400,000 in lost business . . . ").

Along with being supported by plain-meaning and prior history, Appellants' interpretation of "causing the loss of property" is also consistent with how a similar provision of a very different federal law has been interpreted. The Price Anderson Act governs liability-related issues for non-military nuclear facilities, partially indemnifying the nuclear industry against liability for claims arising from nuclear incidents, while also ensuring compensation coverage for the general public. Among other provisions, the Act determines the law applicable to cases about "loss of, or damage to, or loss of use of property" caused by a nuclear incident.  42 U.S.C. § 2014 (w).  In *Radiation Sterilizers, Inc. v. United States*, 867 F. Supp. 1465, 1469-70

---

However, the Government's brief on appeal, describing the same evidence, clarifies the record. *See* Initial Brief, Appellee-Respondent, *United States v. Fullmer*, No. 06-4211, 2008 U.S. 3d Cir. Briefs LEXIS 1334, at 46 (3d Cir. June 17, 2008) ("HLS had to purchase new hardware, new fire walls and additional software to combat the attack"). The purchase of more sophisticated equipment to guard against cyber-attacks is an increased business cost, not physical damage to tangible property.

(E.D. Wash. 1994), a court considered whether loss of profits, loss of customers, loss of goodwill, loss of access to operating cash and credit, loss of business opportunity and diversion of management time and resources  amounted to "damage to . . . property" as described in the Act. The court noted that some of this property is intangible, but held that it met the statutory provision anyway, as it has long been established in contract and tort law that a business's property includes intangibles such as profits and business goodwill. *Id.* at 1471.

ii. <u>The District Court's Interpretation of (a)(2)(A) to Exclude Causing "Economic Damage" is Erroneous and Unsupported.</u>

The District Court did not disagree that, read on its own, subsection (a)(2)(A) prohibits causing a business to spend money or lose profit. Rather, the court interpreted the problem away based on subsection (a)(2)(A)'s interplay with the AETA's penalty provision. *See* A09-10.  Penalties under the AETA depend on the amount of "economic damage" and/or bodily injury that result from a substantive violation. 18 U.S.C. § 43(b). Economic damage is defined, as, *inter alia*, "the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise" but "does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise." *Id.* at § 43(d)(3).

The District Court reasoned that Congress' "specific inclusion of the defined term 'economic damage' in the penalties provision of the statute, but not in the offense conduct, indicates that Congress did not intend to criminalize conduct that solely causes economic loss as damage to property." A09-10 (*quoting Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Under this analysis, a substantive violation under (a)(2)(A) would require physical harm to tangible property—breaking into a lab for example, and releasing animals. The "economic damage" caused, including the replacement cost of animals, the additional staff time, the costs to fix the building, etc, would determine penalty. However, an action that *only* caused economic damage, without physical harm to tangible property—like the Huntingdon email attacks that prompted the purchase of more sophisticated software, caused expenditure of money and staff time, and resulted in lost profits—would not meet the elements of an AETA violation. Appellants agree that this would be a better criminal statute, but it is simply not what Congress wrote.

The District Court's reliance on *Bates* would only make sense if Congress used the phrase "economic damage" in the AETA in a way that rendered the use of a different term in a different provision meaningful. For example, in *Duncan v. Walker,* 533 U.S. 167, 173-74 (2001), the Supreme Court relied on *Bates* to interpret

a provision of the Antiterrorism and Effective Death Penalty Act which tolls the time for filing a habeas action while "State post-conviction or other collateral review" is pending. The habeas petitioner argued that "other collateral review" should be read to include *federal* habeas review. *Duncan,* 533 U.S. at 172. The Court disagreed, because in several other sections of the statute Congress explicitly used the words "State or Federal" to denote the given provision's application to both those types of proceedings. *See, id.* at 172-73 ("28 U.S.C. § 2254(i) (1994 ed., Supp. V) provides: 'The ineffectiveness or incompetence of counsel during *Federal or State* collateral post-conviction proceedings shall not be a ground for relief…' Likewise, the first sentence of 28 U.S.C. § 2261(e) (1994 ed., Supp. V) provides: 'The ineffectiveness or incompetence of counsel during *State or Federal* post-conviction proceedings in a capital case shall not be a ground for relief…'".) It would be anomalous for Congress to use the words "State or Federal" repeatedly, and then elsewhere deviate from this clear language with the phrase "State post-conviction or other collateral review," without meaning to exclude federal review. *Id.* at 173-74.

In contrast, nowhere in the AETA does Congress discuss "causing economic damage" and "damaging or causing the loss of any property" *in the same provision*, such that another statutory reference to "damaging or causing the loss of any property" without mention of "causing economic damage" might have bearing on the intended meaning of "damaging or causing the loss of property." By its plain meaning "caus[ing] the loss of any  . . . property" is broad enough to include causing

the loss of money or profit. That such damage *also* counts as "economic damage" for penalty purposes presents no anomaly.

In contrast, one could imagine Congress having written the statute as follows:

> (a) Offense. Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce--
>> (1) for the purpose of *causing economic damage to an animal enterprise or damaging or causing the loss of any real or personal property belonging to an animal enterprise;* and
>> (2) in connection with such purpose--
>>> (A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise. . .

If the AETA were so written, Congress' use of "*causing economic damage to an animal enterprise or* damaging or causing the loss of any real or personal property belonging to an animal enterprise" in the purpose provision combined with Congress' exclusion of "causing economic damage" in the liability provision would have real meaning for proper interpretation of the "damages or causes the loss" phrase. Congress would have to be presumed to have left the second reference to "causing economic damage" out for a reason. But without this basis for comparison, and given the breadth of the common meaning of "any personal property," exclusion of the phrase "economic damage" from the real AETA's liability provision has no such impact.

Moreover, the District Court's interpretation of "causing the loss of *any* real or personal property" to mean "causing the loss of real or personal property except

19

money or intangibles" renders Congress' use of the word "any" void. *But see Duncan,* 533 U.S. at 174 (collecting cases explaining that the court's duty "to give effect, if possible, to every clause and word of a statute" is a "cardinal principle of statutory construction") (citations omitted). It is impossible to fairly interpret "*any* property" to mean "only tangible property." *See, Harrison v. PPG Indus.,* 446 U.S. 578, 589 (1980) (concluding "that the phrase, 'any other final action,' in the absence of legislative history to the contrary, must be construed to mean exactly what it says, namely, *any other* final action") (emphasis in original); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 221 (2008) ("Congress could not have chosen a more all-encompassing phrase than 'any other law enforcement officer'"). The District Court's analysis requires ignoring the word "any" altogether.

The District Court also relied on Congress' inclusion of the word "used" in subsection (a)(2)(A) to buttress its interpretation. *See* A10; 18 U.S.C. § 43(a)(2)(A) ("intentionally damages or causes the loss of any real or personal property (including animals or records) *used* by an animal enterprise…") (emphasis added). Under the District Court's reasoning, only tangible property is "used," so causing the loss of intangible property (like profit) doesn't meet the elements of (a)(2)(A). This logic is flawed, and wouldn't save the statute from overbreadth regardless. First, whether considered tangible or intangible, the parties below agreed that money may be "used." A10. Thus, the District Court's interpretation of the word "used" might limit (a)(2)(A)'s application to causing the loss of profit, but it supports an interpretation of "causing the loss of property" which includes causing a business

to *spend currently held money*. This reading of the statute would still give rise to a serious overbreadth problem. Second, the District Court's analysis ignores the balance of the provision. Subsection (a)(2)(A) addresses one who "intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, *or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise*." 18 U.S.C. § 43(a)(2)(A) (emphasis added). The term "used" does not appear after the second reference to "real or personal property." If it limited the definition of the preceding clause, "personal property" would mean something different in the two clauses: illogically, the AETA would protect only tangible property belonging to an animal enterprise, but all property belonging to a person or entity related to an animal enterprise.

Finally, the District Court noted that the AETA's definition of "economic damage" excludes "lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise" and it "would not make sense for the statute to criminalize the intentional disclosure of information regarding an animal enterprise that intends to cause economic damage (but not other property damage), and then carve an exception out of the penalties provision for losses caused by that same conduct." A10-11 (*citing* 18 U.S.C. § 43(d)(3)(B)). But there are possible explanations for this choice: perhaps Congress wanted to ensure that certain economic damage could not heighten a defendants' penalty, even if it could serve as

a basis for liability. And even if the Court were inclined to agree that this choice makes "not a whit of sense," *CSX Transp., Inc. v. Ala. Dep't of Revenue,* 562 U.S. 277, 295 (2011), "Congress wrote the statute it wrote." *Id.* at 296.

     iii.  <u>Criminalizing Causing a Business to Spend Money or Lose Profit Criminalizes Speech</u>

With the proper interpretation of (a)(2)(A) established, the overbreadth of the subsection is simply illustrated: it prohibits almost all effective advocacy by animal rights activists. As described above, any activist who crosses state lines or uses the internet to organize a protest at an animal enterprise, which results in the business losing money, or paying a security guard overtime, has violated the statute. For example, the recent documentary Blackfish levied sharp criticism at SeaWorld aquatic theme parks for their treatment of captive killer whales. The negative publicity from the film led to the company losing $925 million in market capitalization and a subsequent securities class action for SeaWorld's failure to disclose potential liability related to the company's treatment of killer whales and the resultant negative publicity from the documentary.[4] The company also announced a multi-million dollar expansion of its orca tanks in response to the negative publicity generated by the film.[5] The film meets all of the requirements of

---

[4] *See, e.g.,* Eriq Gardner, *SeaWorld Hit With Lawsuit Over Failure to Advise on 'Blackfish' Impact*, THE HOLLYWOOD REPORTER, September 10, 2014, http://www.hollywoodreporter.com/thr-esq/seaworld-hit-lawsuit-failure-advise-731846.

[5] Tony Perry, *Amid 'Blackfish' backlash, SeaWorld to expand orca environments*, LA. TIMES, August 14, 2014, http://www.latimes.com/local/lanow/la-me-ln-seaworld-orca-plans-20140814-story.html.

an AETA violation. SeaWorld, which uses captive animals for entertainment, is undoubtedly an animal enterprise. The filmmakers' admitted "purpose" was to convince people to avoid patronizing SeaWorld's parks and ultimately affect their bottom line.[6] And the resultant damage caused SeaWorld more than a billion dollars in lost profits, loss of market capitalization, and money spent to construct its planned tank expansions. That the Government is unlikely to bring a controversial prosecution against documentary filmmakers does nothing to save the statute's overbreadth. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (explaining the dangers of "putting faith in Government representations of prosecutorial restraint").

This overbreadth has real consequences. Uncertainty over the AETA's scope and breadth has left activists to guess as to whether some of their activity presents the risk of a federal terrorism charge. Does the AETA criminalize picketing activity if the picketing is effective enough to close down a fur store?[7] Are undercover investigators who work with local prosecutors and wear hidden cameras now risking animal enterprise terrorism charges if their investigation focuses on a

---

[6] *See* Austin Siegemund-Broka, *'Blackfish' Director Talks SeaWorld Revenue Drop: "People Are Truly Willing to Change Ethically"*, THE HOLLYWOOD REPORTER, August 20, 2014, http://www.hollywoodreporter.com/news/blackfish-director-talks-seaworld-revenue-726447.

[7] *See* Seth Prince and Spencer Heinz, *Activists Look Beyond Fur Shop's Move*, THE OREGONIAN, November 30, 2006, at B2 (discussing such a debate between an animal enterprise owner and animal rights activists).

slaughterhouse?[8] On its face, the AETA covers this activity and much more. *See* 152 Cong. Rec. E2100-01 (Nov. 13, 2006) (statement of Hon. Steve Israel) ("This bill criminalizes conduct that 'intentionally damages or causes the loss of any real or personal property,' however, the bill fails to define what 'real or personal property' means. As a result, legitimate advocacy - such as a boycott, protest, or mail campaign - that causes an animal enterprise to merely lose profits could be criminalized….").

This overbreadth, and resulting chill, must be corrected. However, because the AETA fails to include any *actus reus*, its overbreadth cannot be eliminated by use of a limiting construction. Adding an *actus reus* provision to the statute (for example, by interpreting the AETA to prohibit *using force or violence* to damage or cause the loss of any personal property) would be a "serious invasion of the legislative domain." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n. 26 (1995). A court may not "rewrite a state law to conform it to constitutional requirements." *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 397 (1988).

### B.  The AETA's Rules of Construction Do Not Save it from Unconstitutional Overbreadth

The District Court buttressed its erroneous interpretation of (a)(2)(A) through reference to the AETA's rules of construction.  *See* A11-12, *citing* 18 U.S.C. § 43(e)(1) (the AETA shall not be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal

---

[8] *See* Kim Severson, *Upton Sinclair, Now Playing on YouTube*, N.Y. TIMES, March 12, 2008, at F1 (stating undercover investigators at slaughterhouses risked prosecution under the AETA).

prohibition by the First Amendment"). According to the District Court, this rule and AETA's legislative history, "unambiguously indicate that Congress did not intend for the AETA to infringe upon protected First Amendment speech." A11.

But regardless of intent, Congress cannot shield an unconstitutional statute from scrutiny simply by adding a First Amendment exception that contradicts the broad sweep of its substantive provisions. *See, e.g., Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 333 (4th Cir. 2001) (savings clause could not save regulatory statute from a constitutional challenge because it was "repugnant to the straightforward, limiting language of the respective statutory provisions" (citing *Looney v. Com.*, 133 S.E. 753, 755 (Va. 1926))); *Fisher v. King*, 232 F.3d 391, 395 (4th Cir. 2000) (savings clause is disregarded as void when it is inconsistent with the body of the statute); *CISPES (Comm. in Solidarity with the People of El Sal.) v. FBI*, 770 F.2d 468, 474 (5th Cir. 1985) (First Amendment savings clause "cannot substantively operate to save an otherwise invalid statute"); *State v. Machholz*, 574 N.W.2d 415, 421 n.4 (Minn. 1998) (same); *Long v. State*, 931 S.W.2d 285, 295 (Tex. Crim. App. 1996) (same).[9] If this were not so, the following law would be permissible: "[I]t shall be a crime to say anything in public unless the speech is protected by the first and fourteenth amendment." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-26, at 716 (1st ed. 1978).

---

[9] Relatedly, in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the Court considered a First Amendment savings clause similar to the AETA's as evidence of Congress' intent that its material support statute would not violate the First Amendment, *id.* at 36, but nonetheless analyzed the statute's substantive provisions and definitions to determine whether the Constitution was violated. *Id.* at 18-25.

The District Court acknowledged that "a savings clause" cannot "operate to save an otherwise invalid statute," A12, *citing CISPES*, 770 F.2d at 474, but held that the clause could validate the Court's construction of the statute to exclude liability based on economic damage (which would have the effect of excluding liability based on First Amendment protected activity). However, as shown above, (a)(2)(A)'s broad application to an individual who "damages or causes the loss of any real or personal property" *cannot* legitimately be interpreted to mean one who "physically damages tangible property." Where the only fair interpretation of a statute would penalize a substantial amount of protected speech, Congress' intent to respect the First Amendment, as expressed in a general rule of construction, does not give a court leave to rewrite the statute.

Moreover, even if a well-drafted savings clause could operate to limit a statute's substantive reach, the AETA's broad First Amendment exception cannot dispel the plain sweep of the statute, because it fails to clarify what is protected under the First Amendment and what is not. This "trades overbreadth for vagueness" and "abandons scrutiny of the statute altogether for case-by-case adjudication." *State v. Moyle*, 705 P.2d 740, 748 n.12 (Or. 1985) (*en banc*), *see also Rubin v. City of Santa Monica*, 823 F. Supp. 709, 712 (C.D. Cal. 1993) (First Amendment exception "beg[s] the question. What are protected activities, and what are nonprotected activities? What does the First Amendment exception really mean?"). Lay persons cannot be presumed to understand what the First Amendment does and does not protect to the degree of certainty required for

adequate notice in the criminal context. *See Long*, 931 S.W.2d at 295 ("An attempt to charge people with notice of First Amendment caselaw would undoubtedly serve to chill free expression"); *Moyle*, 705 P.2d at 748 n.12.

Even taken at face value, the AETA's First Amendment exception covers only "expressive conduct," with no mention of other protected activity such as pure speech. 18 U.S.C § 43(e). This leaves to the potential criminal defendant the responsibility of determining what constitutes "expressive conduct," a question that has bedeviled Supreme Court Justices, let alone laypersons. *See generally* John Greenman, *On Communication*, 106 MICH. L. REV. 1337, 1339-40 (2008) ("The law nominally protects acts that are 'expressive,' but rarely defines that word"). Compare *United States v. O'Brien*, 391 U.S. 367, 376 (1968) (conduct cannot "be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"), with *Spence v. Washington*, 418 U.S. 405, 409 (1974) (conduct is protected when it is "sufficiently imbued with elements of communication") and *Virginia v. Black*, 538 U.S. 343, 360-61 (2003) (referring to "symbolic expression" and "symbolic conduct" as protected in some circumstances).

The examples of "expressive conduct" provided in the Rules of Construction – "peaceful picketing or other peaceful demonstration" – further confuse the issue. For instance, some conduct is expressive and protected, even if it is not "peaceful." *See e.g., Brandenburg v. Ohio*, 395 U.S. 444, 446 n.1 (1969) (urging "revengeance" while others shouted "bury the [racial epithet]" is protected speech); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982) (threats by a civil rights leader that he

would "break [the] damn neck" of anyone who patronized a "racist store[]" is

protected). Other expressive conduct, like civil disobedience, is widely recognized as

a peaceful form of demonstration, but is not protected by the First Amendment.

The AETA's Rules of Construction require potential speakers to ignore the

broad reach of the statute's substantive provision in favor of their own

determination of what counts as expressive conduct and what kind of protest

activity will be protected by the First Amendment. Reasonable people will steer

clear of advocacy that might be protected but that also may be close to the First

Amendment line. *NAACP v. Button*, 371 U.S. 415, 433 (1963).

### C.  The AETA's Conspiracy / Attempt Provision Criminalizes Opposition to Businesses that use Animal Products.

The AETA's attempt / conspiracy provision is also substantially overbroad.

The provision criminalizes one who "travels in interstate or foreign commerce, or

uses or causes to be used the mail or any facility of interstate or foreign commerce

(1) for the purpose of damaging or interfering with the operations of an animal

enterprise; and (2)  in connection with such purpose . . .  (C)  conspires or attempts

to do so." In other words, one violates the AETA simply by conspiring to travel

across state lines for the purpose of damaging or interfering with an animal

enterprise.

While the breadth of this provision is somewhat shocking, the interpretation

is hard to avoid: subsection (a)(2)(C)'s inclusion on a list of three offenses, joined

together by "or," plainly permits (a)(2)(C)'s application in the absence of either

(a)(2)(A) or (a)(2)(B). Just as threats under (a)(2)(B) do not require any damage to property under (a)(2)(A), (a)(2)(C) similarly stands alone as a basis for criminal liability under subsection (a).

The structure of other federal criminal statutes further supports this reading. Other federal criminal statutes that incorporate attempt and/or conspiracy language either include such language in each subsection it applies to,[10] include a separate attempt/conspiracy subsection explicitly identifying other subsections it incorporates,[11] or have attempt/conspiracy language separate and apart from the list of subsections of offenses separated by "or," thus indicating that the conspiracy/attempt language applies to all subsections in the list.[12]  Each of the above three methods are clear in their text and structure as to how attempt or conspiracy operate *vis a vis* other sections of the statute.  The AETA, alone in its flawed structure, is not.

In response to prior constitutional challenges, the United States has previously argued that an attempt or conspiracy "to do so" under (a)(2)(C) refers back to (a)(2)(A) (causing property damage) or (a)(2)(B) (issuing threats). Under this interpretation an AETA conspiracy can be either

---

[10] *See, e.g.*, 18 U.S.C. §§ 33, 81, 175, 247, 248, 609, 793, 794, 832, 836, 924, 930, 1203, 1204, 1262, 1362, 1363, 1365, 1368, 1470, 1505, 1512, 1513, 1791, 1951, 1959, 2071, 2118, 2119, 2153, 2154, 2155, 2241, 2251, 2260, 2275, 2332, 2385, 2388, 2421, 2422, 2423, 2425, 2339(a), 2339A, 2339B.

[11] *See, e.g.,* 18 U.S.C. §§ 18, 32, 38, 351, 831, 1201, 1751, 1831, 1832, 2280, 2281, 2291, 2332B, 2332F, 2339C.

[12] *See, e.g.*, 18 U.S.C. §§ 37, 1091, 1466A, 1512, 1513, 2241, 2242.

- a conspiracy to travel in interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise, *and* in connection with such purpose intentionally damaging or causing the loss of any real or personal property (including animals or records) used by an animal enterprise under (a)(2)(A) & (a)(2)(C), or

- a conspiracy to travel in interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise, *and* in connection with such purpose, intentionally placing a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family… of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation, under (a)(2)(B) & (a)(2)(C).

*See, e.g.,* Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), *Blum v. Holder*, No. 11-cv-12229 (D. Mass. Mar. 9, 2012), ECF No. 12 at n. 9. The only two courts to have considered the issue agreed with this interpretation. *See Blum v. Holder*, 744 F.3d 790, 802-803 (1st Cir. 2014), *United States v. Buddenberg,* No. CR-09-00263, 2009 U.S. Dist. LEXIS 100477, *34-35 (N.D. Cal. Oct. 28, 2009).

However, in the most recent AETA prosecution—of Nicole Kissane and Joseph Buddenberg in the Southern District of California—the United States changed its position, indicating in its Preliminary Trial Memorandum that the *elements* of Buddenberg & Kissane's AETA conspiracy included *only* that:

1. There was an agreement between at least two persons:
   a. to travel in interstate or foreign commerce;
   b. for the purpose of damaging or interfering with the operation of an animal enterprise;
2. The defendant became a member of the conspiracy knowing of one of its objects and intending to help accomplish it; and
3. The offense resulted in more than $100,000 in damages (increases the statutory maximum to 10 years.)

*See* Preliminary Trial Memorandum, *United States v. Buddenberg*, No. 15-cr-01928 (S.D. Cal. 2015), ECF No. 60, p. 21.[13] The first two elements apply to all conspiracy charges under (a)(2)(C). The third will vary depending on the penalty sought; subsection (b)(1)(A), for example, allows for a conviction even if the offense results in no economic damage. This means that under the Government's new approach a conspiracy to commit animal enterprise terrorism under (a)(2)(C) and (b)(1)(A) would involve only two elements:

> 1. There was an agreement between at least two persons:
>     a. to travel in interstate or foreign commerce;
>     b. for the purpose of damaging or interfering with the operation of an animal enterprise; and
> 2. The defendant became a member of the conspiracy knowing of one of its objects and intending to help accomplish it.

The breadth of this provision's impact on protected speech cannot be overstated. Black's Law Dictionary defines "damage" to mean "[l]oss or injury to person or property." BLACK'S LAW DICTIONARY 471 (10th ed. 2014); *see also* MERRIAM-WEBSTER COLLEGIATE DICTIONARY 314 (11th ed. 2003) (defining "damage" as "loss or harm resulting from injury to person, property, *or reputation*.") (emphasis added). "Interference" is defined as "[t]he act of meddling in another's affairs" or "[a]n obstruction or hindrance." BLACK'S LAW DICTIONARY at 937. As we presume that "interfering" means something distinct from "damaging," the word must be understood more broadly than "causing loss or injury." *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 941

---

[13] On March 16, 2016 the district court accepted Buddenberg and Kissane's guilty pleas to one count of conspiracy. Order Adopting Findings and Recommendations, *United States v. Buddenberg*, No. 15-cr-01928 (S.D. Cal. 2015), ECF No. 74, 75.

(7th Cir. 2000) ("Different words in a statute . . . should be given different meanings unless the context indicates otherwise.")

The Supreme Court recognized decades ago that prohibitions on "interfering" with a business burden speech. *See Thornhill v. Alabama*, 310 U.S. 88, 91-92 (1940) (while speech has the power to interfere with or damage business operations, it cannot be proscribed on that basis). *Thornhill* involved a statute prohibiting, *inter alia*, picketing a place of business "for the purpose of hindering, delaying, or interfering with or injuring any lawful business or enterprise of another…." 310 U.S. at 91. The Court considered the statute on its face, cognizant that the very existence of such a penal statute, which "sweeps within its ambit . . . activities that in ordinary circumstances constitute an exercise of freedom of speech  . . . results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview." *Id.* at 97-98. Thus, while protected expression might very well harm business interests, "the danger of injury to an industrial concern is neither so serious nor so imminent," as to allow such a sweeping proscription. *Id.* at 105. *See also, United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 966 (9th Cir. 2008) (rule designed to restrict speech that "would interfere with normal business operations" is unconstitutional); *Dorman v. Satti*, 862 F.2d 432, 436-437 (2d Cir. 1988) (statute that prohibited "interfere[ing]" with or "harass[ing]" hunters unconstitutionally overbroad); *Hirschkop v. Snead,* 594 F.2d 356, 371 (4th Cir. 1979) (Virginia Code of Professional Responsibility prohibition on statement "reasonably likely to interfere with a fair

trial" overbroad and vague); *Nitzberg v. Parks,* 525 F.2d 378, 383 (4th Cir. 1975) (school ban on distribution of literature likely to lead to "substantial disruption of or material interference with school activities" overbroad).

Subsection (a)(2)(C) of the AETA is just as broad as the statute struck down in *Thornhill,* as it equally proscribes "nearly every practicable, effective means whereby those interested . . . may enlighten the public" on the subject at hand. 310 U.S. at 104. *Every single time* an animal rights group plans a multistate or national protest or campaign it would violate this federal law, as such activities are intended to damage a business' profits or reputation, and to hinder their ability to continue to exploit animals.

The provision's overbreadth extends not just to (b)(1)(A) conspiracies – which do not require the prosecution to prove economic damage – but also to those which result in such damage. This is because the AETA's definition of economic damage includes protected protest activity that leads to increased security costs. 18 U.S.C. § 43(d)(3).  If, for example, an animal enterprise chooses to hire additional security in the face of a peaceful and lawful picket on a public sidewalk across the street from enterprise headquarters, economic damage has occurred. It also includes unlawful third party reaction to lawful protest.  If activists were to organize a picket of a fur store and a third party reacted to the disclosure of information by entering the store and splashing paint on fur coats, this would qualify as economic damage. Similarly, if one business were to unlawfully break a contract with another business as a result of activist pressure, subsection (d)(3)(B) would not exempt the activists'

activity. The same result would apply if activist pressure led to a government

divestment later deemed unlawful. *Cf. Crosby v. Nat'l Foreign Trade Council*, 530

U.S. 363 (2000). For this reason, AETA's entire conspiracy and attempt provision—

(a)(2)(C)—must be struck down as overly broad

The only possible defense of the provision is, as the *Buddenberg* and *Blum*

courts previously held, that the conspiracy provision should be read counter-

textually to refer back to subsections (a)(2)(A) and (a)(2)(B). But this is not the

United States' current interpretation of the statute, *see Buddenberg,* ECF No. 60 at

21, nor does it accord with the statute's plain language. Now that the United States

has embraced the plain meaning of the statute, and has actually begun charging

individuals (and securing guilty pleas) for (a)(2)(C) conspiracies which do not

include as an element damage to property under (a)(2)(A) or threats under (a)(2)(B),

the provision's overbreadth cannot be ignored.

Finally, it makes no difference that the conspiracy undertaken by these

Appellants involved (a)(2)(A) property damage: the doctrine of facial overbreadth is

a response to the reality that a statute's "very existence may cause others not before

the court to refrain from constitutionally protected speech or expression." *Broadrick*

*v. Oklahoma*, 413 U.S. 601, 612 (1973). Facial invalidation is required.


## III.    The AETA is Void for Vagueness

Regardless of whether the AETA substantially burdens protected speech, it is

unconstitutional on its face because it "invites arbitrary enforcement" in violation of

the Fifth Amendment's guarantee of due process. *See Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The District Court rejected this argument, finding that the AETA "much more clearly defines the conduct it criminalizes" than do statutes that have been found unconstitutionally vague. A16. However, by searching the statute for "a vague term," A17, the District Court improperly collapsed two independent prongs of the constitutional test into one. Regardless of whether any of the individual terms used in the statute are unclear, the AETA "is void for vagueness . . . because it encourages arbitrary and erratic arrests and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

### A.    Appellants' Facial Challenge to the AETA Is Proper

As a preliminary matter, the District Court noted some confusion as to whether a defendant may bring a facial vagueness challenge to a law which does not impact First Amendment rights.[14] See A13-14. Such a challenge is clearly allowed. *See, e.g.*, *Johnson v. United States*, 135 S. Ct. 2551 (2015) (finding residual clause of Armed Career Criminal Act invalid on its face without regard to the First Amendment). A criminal statute is facially void for vagueness when it would be unconstitutional in many of its applications. *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (noting that the Court may "invalidate a criminal statute on its face even when it could conceivably have had some valid application"); *see also, United States v. Rodgers*, 755 F.2d 533, 544 (7th Cir. 1985) ("[A] party seeking to overturn a

---

[14] Of course, Appellants argue that the AETA *does* impact First Amendment rights, *see supra*, section II, but the vagueness argument does not depend on the overbreadth argument; the AETA's vagueness requires facial invalidation whether or not the Court agrees with Appellants' interpretation of the statute.

statute for vagueness on its face must in essence establish that it is unconstitutionally vague in at least a substantial number of the cases to which it could apply."). This rule does not turn on the presence of First Amendment considerations. *See, e.g., id.* at 543-44 (considering facial vagueness after interpreting the statute to not burden a substantial amount of speech), *United States v. Walton*, 36 F.3d 32 (7th Cir. 1994) (considering facial vagueness challenge to Anti-Tampering Act without regard to First Amendment), *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1149 (9th Cir. 2014) (holding a statute "unconstitutionally vague on its face" without any discussion of First Amendment rights).

As explained below, the AETA is void for vagueness in that it invites arbitrary and discriminatory enforcement by providing the government with too much discretion in deciding whom to prosecute. This excessive discretion inheres in *every* case brought under the statute, and thus the statute is *facially* void for vagueness. As Justice Breyer reasoned in an analogous case:

> [T]he ordinance violates the Constitution because it delegates too much discretion to a police officer to decide whom to order to move on, and in what circumstances. And I see no way to distinguish in the ordinance's terms between one application of that discretion and another. The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion in every case. And if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications.

*City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J., concurring in part and concurring in the judgment). Accordingly, the District Court was correct to resolve Appellants' facial challenge on the merits.

### B.    A Statute's Susceptibility to Arbitrary and Discriminatory Enforcement Is an Independent Basis for Finding a Violation of Due Process

A statute is void for vagueness if it is either "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis…." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Although many statutes are found to violate both constitutional requirements, *e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972), *Bell v. Keating*, 697 F.3d 445, 462-63 (7th Cir. 2012), the Supreme Court has said explicitly that these are "two *independent* reasons" to find a statute unconstitutional. *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (emphasis added); *see also Bell*, 697 F.3d at 455 ("A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both.").

The second prong does not look for vagueness or clarity of statutory language but for the potential for arbitrary or discriminatory enforcement of the provision in question. This is the more important of the two prongs. *Kolender*, 461 U.S. at 358

("[T]he more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974))); *see also Kucharek v. Hanaway*, 902 F.2d 513, 518 (7th Cir. 1990) ("The primary purpose of this doctrine as articulated in the modern cases is the realistic one of limiting prosecutorial discretion rather than the unrealistic one of protecting the reliance of people—for there are precious few—who actually read statutes, criminal or otherwise, before deciding whether to do something.").

Accordingly, rare though they might be, statutes that invite arbitrary enforcement *without* using indefinite language are nevertheless void for vagueness. For example, in *Metro Produce Distribs., Inc. v. City of Minneapolis*, a plaintiff brought suit alleging that a city ordinance prohibiting "idling" of vehicles was void for vagueness. 473 F. Supp. 2d 955, 961 (D. Minn. 2007). The court agreed, *not* for "the lack of an express definition" of "idling," but for the lack of any standards of enforcement given the magnitude of likely violations. *Id.* ("[T]he ordinance fails to . . . . define the duration of prohibited idling or the amount of time between when the vehicle stops and when idling becomes prohibited. This vagueness provides city officials unfettered discretion to apply the ordinance in an arbitrary manner.  For example, an official could cite one motor vehicle for remaining stationary one minute and pass over another motor vehicle that remained stationary for thirty minutes."). The court found the ordinance unconstitutionally vague based solely on

the "unfettered discretion" it conveyed to law enforcement. *Id.* at 962 ("[T]he vagueness that dooms this ordinance is not the product of uncertainty about the normal meaning of 'idling,' but rather about what idling is covered by the ordinance.").

Similarly, in *United States v. Vest*, the defendant, a state trooper, moved to dismiss his indictment for illegal possession of a machine gun, which he evidently used only for law enforcement purposes. 448 F. Supp. 2d 1002, 1004 (S.D. Ill. 2006). The defendant argued—and the court found—that two federal statutes were void for vagueness, the first under both prongs of the test and the second only under the arbitrary-enforcement prong. *Id.* at 1006. With regard to the latter statute, its language was perfectly clear; the constitutional problem was that it applied not only to the defendant but also to other police officers whom the government chose not to prosecute. *See id.* at 1014 ("[A]ll of the members of the Illinois State Police SWAT team would then technically be in violation of these two subsections of § 5861 . . . ."). The district court observed that:

> [T]he AUSA . . . had to clarify exactly under what circumstances the Government would choose *not* to prosecute a police officer possessing a machine gun . . . . This explanation offered by the Government evidences its inappropriate power to determine what constitutes illegal behavior under §§ 5861(b) and (d). The resultant ability of the Government to thereby define criminal behavior under this statute is prohibited by the Constitution and binding precedent.

*Id.* Accordingly, the court found the statute unconstitutional "because it allows for complete arbitrary enforcement." *Id.*

As well, in *Act Now to Stop War and End Racism Coalition v. District of Columbia*, plaintiffs filed suit challenging a district law governing advertisements

for "events" as void for vagueness. 905 F. Supp. 2d 317, 326 (D.D.C. 2012), *appeal filed*, No. 12-7140 (D.C. Cir. Sept. 26, 2013). By its terms, the regulation applied to signs which explicitly referred to specific events, as well as signs that did not, if "reasonably determined from all circumstances by the inspector" to relate to a specific event. *Id.* at 347. The plaintiff argued that the definition of "event" was void for vagueness under both prongs of the constitutional test. *Id.* at 345. The court explicitly abstained from determining whether "event" was defined with ambiguous language, instead "finding the law unconstitutionally vague" purely on the basis of its "broad grant of administrative discretion" to government officials. *Id.* at 348, 351; *see also JWJ Indus., Inc. v. Oswego County*, No. 5:09-cv-740, 2012 U.S. Dist. LEXIS 164279, *19-20 (N.D.N.Y. Nov. 16, 2012) (finding a local law concerning "Recyclable Materials" unconstitutionally vague because it grants "case-by-case discretion" to the government to define what the law covers, potentially allowing for "arbitrary and discriminatory" enforcement), *aff'd*, 538 F. App'x 11 (2d Cir. 2013).

Just like the laws in the foregoing cases, the AETA is void for vagueness because its remarkable breadth invites arbitrary and discriminatory enforcement. The AETA prohibits causing damage or loss to any "animal enterprise," which is defined to include any "commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing." 18 U.S.C. § 43(d)(1)(A). This covers every non-vegan grocery store, corner store, and restaurant in the country, along with most clothing stores (so long as they carry leather, wool or silk). And the AETA does *not* require

that the defendant target an enterprise *because of* its connection to animals. The defendant need only intend to damage the enterprise, whether motivated by an animal rights ideology or the desire to see glass shatter.

The statute thus covers innumerable property crimes across the United States, inviting federal prosecutors to pick and choose arbitrarily which offenders will be subject to federal prosecution. This is no abstract fear. Elsewhere, the government has admitted that "only self-identified animal rights activists have been prosecuted under the AETA." Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), *Blum v. Holder*, No. 11-cv-12229 (D. Mass. Mar. 9, 2012), ECF No. 12 at 29. This is exactly the sort of discriminatory law enforcement that the void-for-vagueness doctrine is supposed to prevent. *See Desertrain*, 754 F.3d at 1156-57 ("Section 85.02 is broad enough to cover any driver in Los Angeles who eats food or transports personal belongings in his or her vehicle. Yet it appears to be applied only to the homeless. The vagueness doctrine is designed specifically to prevent this type of selective enforcement . . . . Section 85.02 has paved the way for law enforcement to target the homeless and is therefore unconstitutionally vague."); *see also United States v. Lanning*, 723 F.3d 476, 483 (4th Cir. 2013) ("[T]he facts of this case illustrate the real risk that the provision may be 'arbitrar[ily] and discriminator[ily] enforce[d].' The sting operation that resulted in Defendant's arrest was aimed not generally at sexual activity in the Blue Ridge Parkway; rather, it specifically targeted gay men." (alterations in original) (citation omitted) (quoting *Hill*, 530 U.S. at 732)).

41

The District Court rejected this theory, stating simply that "the fact that the AETA criminalizes clearly defined conduct against a wide range of potential victims does not lead to 'arbitrary and erratic arrests and convictions.'" A17 (quoting *Bell*, 697 F.3d at 462). It may be true that a wide-ranging statute does not *necessarily* lead to arbitrary or discriminatory enforcement, but it certainly "invites" it, *Johnson*, 135 S. Ct. at 2556, and, in the case of the AETA specifically, *has* led to it.

Like a modern-day vagrancy statute, the AETA "set[s] a net large enough to catch all possible offenders," leaving it to the courts to "say who could be rightfully detained, and who should be set at large." *Papachristou*, 405 U.S. at 165 (internal quotations omitted). This "convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," tips the scales of justice such that "even-handed administration of the law is not possible," and thus "cannot be squared with our constitutional standards." *Id.* at 170, 171 (internal citations and quotations omitted).

## IV.  The AETA's Punishment of Property Damage as a "Terrorist" Offense Violates Substantive Due Process on its Face and As Applied to Appellants' Alleged Conduct

Finally, the AETA is also unconstitutional on its face, and as applied to Appellants, because it is so irrational as to violate substantive due process. Appellants were charged under subsection (a)(2)(A) of the AETA, which prohibits causing loss or damage to an animal enterprise. The provision includes no requirement of ideological motive, violence, or the threat of violence. Yet, the AETA

is a terrorism statute, passed "to provide the Department of Justice the necessary authority to apprehend, prosecute, and convict individuals committing animal enterprise *terror.*" *Animal Enterprise Terrorism Act*, Pub. L.109-374, 120 STAT. 2652 (2006) (emphasis added). Because the prohibited conduct cannot rationally be called terrorism, nor punished as an act of terrorism, the AETA violates substantive due process both facially and as applied to Appellants' conduct.

Substantive due process provides a "residual substantive limit on government action which prohibits arbitrary deprivations of liberty by Government." *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). Where no fundamental rights are involved, substantive due process claims require a showing that the "law bears no rational connection to a governmental interest or that it is so excessive in relation to a valid governmental purpose as to be punitive." *See Van Harken v. City of Chicago*, 906 F. Supp. 1182, 1195 (N.D. Ill. 1995), *citing Reno v. Flores*, 507 U.S. 292, 303-04 (1993).

### A. Appellants Have a Non-Fundamental Liberty Interest in Avoiding Being Labeled "Terrorists."

The District Court assumed without deciding that Appellants had properly articulated a non-fundamental right; this is correct. The substantive due process interest at issue in this case – the right not to have a misleading label attached to one's serious crime – is well-recognized, particularly in the analogous context of challenges by individuals subject to sex offender registry requirements, whose underlying crime involved no sexual component. *See e.g., People v. Knox*, 903 N.E.2d 1149, 1151 (N.Y. 2010) ("the interest defendants assert is in not having their

admittedly serious crimes mischaracterized in a way that is arguably even more stigmatizing, or more frightening to the community, than a correct designation would be. We do not hold this interest to be constitutionally insignificant"), *accord*, *State v. Robinson*, 873 So. 2d 1205 (Fla. 2004); *see also*, *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (recognizing substantive due process interest in being free from being labeled a "*convicted* sex offender," when plaintiffs were never actually convicted of a sex offense).[15]

Indeed, a terrorism label has a *real* impact. The government conceded at argument in the District Court that based *solely* on the Act's title, a defendant convicted under the AETA "will automatically have his case 'seen by a counter terrorism unit employee'", as part of the Bureau of Prisons' process for determining if he will be placed in a "Communication Management Unit" ("CMU"). A20. CMUs are uniquely restrictive, segregated prison units designed in part for prisoners whose "current offense(s) of conviction, or offense conduct, included association, communication, or involvement, related to international or domestic terrorism."

---

[15] Application of rational basis review in the sex offender registration context has led to mixed results, with some courts finding that mandatory sexual offender registration for non-sexual crimes is not rationally related to any legitimate legislative purpose, *see e.g., State v. Robinson*, 873 So. 2d 1205 (Fla. 2004); *ACLU of N.M. v. City of Albuquerque*, 137 P.3d 1215 (N.M. Ct. App. 2006); *State v. Reine*, No. 19157, 2003 Ohio App. LEXIS 52 (Ohio App. Jan. 10, 2003); and others holding that the legislature can rationally require sex offender registration for certain non-sexual crimes, such as kidnapping or false imprisonment of a minor, given that a high percentage of these crimes are committed for a sexual purpose. *See e.g., Knox*, 903 N.E.2d at 1153-1154; *State v. Smith*, 780 N.W.2d 90 (Wis. 2010); *People v. Johnson*, 870 N.E.2d 415 (Ill. 2007); *Moffitt v. Commonwealth*, 360 S.W.3d 247, 256 (Ky. Ct. App. 2012); *People v. Phillip C.*, 847 N.E.2d 801 (Ill. App. Ct. 2006). Here, in contrast, there is no showing that a high percentage of property crimes directed at animal enterprises meet any of the elements of terrorism.

*Aref v. Holder,* 953 F. Supp. 2d 133, 137 (D.D.C. 2013). Other than the Federal Administrative Maximum Prison, Communication Management Units "are the most restrictive facilities in the federal system." *Rezaq v. Nalley*, 677 F.3d 1001, 1009 (10th Cir. 2012).

And even leaving aside conditions of confinement, an individual who is successfully prosecuted under the AETA will be a "convicted terrorist." This labeling carries obvious and significant stigma.  While the government promised below to "not refer to defendants as terrorists at trial or in any other context," *see* Government's Response to Defendants' Motion to Dismiss, Dist. ECF No. 88 at 19, this does not change the reality that Appellants' conviction is for "animal enterprise terrorism." Appellants may have to disclose the nature of their conviction to potential employers, academic institutions, friends and acquaintances. Moreover, the Government's discretion in Appellants' case cannot serve as a basis to deny their *facial* challenge; the San Diego U.S. Attorneys' Office has since used one or other form of the word "terrorism" no less than six times in a subsequent AETA indictment, including characterizing those defendants as "terrorizing the fur industry" and describing their alleged actions as "a form of domestic terrorism." *See* Press Release, Office of the United States Attorney Southern District of California, *Animal Rights Activists Accused of Going on Cross-Country Spree Targeting Fur Industry.*[16]

---

[16] Available at https://www.fbi.gov/sandiego/press-releases/2015/animal-rights-activists-accused-of-going-on-cross-country-spree-targeting-fur-industry. Similarly,

Potential AETA defendants have a non-fundamental liberty interest in avoiding such a stigmatizing and impactful label, which demands protection. Indeed, this Court has recognized far less impactful incursions on liberty. *See, e.g., Swank v. Smart*, 898 F.2d 1247, 1251-52 (7th Cir. 1990) (rational basis review for non-fundamental right of off-duty police officer to offer a motorcycle ride to a young woman). This is because substantive due process "protect[s] a broad sphere of 'harmless liberties' (as well as fundamental rights) . . . ranging from idle chit-chat . . . to wearing a mustache." *Wroblewski v. Washburn*, 965 F.2d 452, 457 (7th Cir. 1992) (internal citations omitted). *See also Hayden v. Greensburg Cmty. Sch. Corp*, 743 F.3d 569, 575-76 (7th Cir. 2014) (rational basis review for non-fundamental right to wear one's hair as one wants), *Greater Chi. Combine & Ctr. v. City of Chicago*, 431 F.3d 1065, 1071-72 (7th Cir. 2005) (rational basis review for non-fundamental right to raise homing pigeons), *Doe v. City of Lafayette*, 377 F.3d 757, 768-773 (7th Cir. 2004) (rational basis review for non-fundamental right to enter public parks to wander and loiter innocently).

### B. Punishing Non-Violent Property Damage as "Terrorism" is Irrational and Serves no Legitimate Government Purpose.

The District Court applied rational basis review, and held that the AETA's terrorism label is rational because the Act was "motivated by preventing violence

---

an FBI press release about the first AETA indictment repeatedly credited the arrests to the Joint Terrorism Task Force, made several references to the "Animal Enterprise Terrorism Act," and included a special agent's quote that "it is inexcusable and cowardly for these people to resort to *terrorizing* the families of those with whom they don't agree." Press Release, FBI San Francisco, *"Four Extremists Arrested for Threats and Violence Against UC Researchers,"* Feb. 20, 2009, http://www.fbi.gov/sanfrancisco/press-releases/2009/sf022009.htm.

and intimidation against animal enterprises and associated individuals." A20-21.

But a legitimate *motivation* is not enough; the means by which Congress has chosen

to prevent violence and intimidation—here by punishing as terrorism non-violent

property crimes—must also be rational.

This Court must thus determine whether "damage[ing] or caus[ing] the loss

of any real or personal property (including animals or records) used by an animal

enterprise" can rationally be labeled "terrorism." While there is no single unifying

definition of terrorism in federal or international law, *see* Nicholas Perry, *The

Numerous Federal Legal Definitions of Terrorism: The Problem of Two Many

Grails*, 30 J. LEGIS. 249 (2004) (analyzing 22 definitions or descriptions of terrorism

in federal law); Sudha Setty, *What's In a Name? How Nations Define Terrorism Ten

Years After 9/11*, 33 U. PA. J. INT'L L. 1 (2011) (analyzing disparate international

and federal definitions of terrorism), there is "a consensus" that violence is a

universal component. *State v. Yocum*, 759 S.E.2d 182 (W. Va. 2014), Perry, 30 J.

LEGIS. 249 at 251, *citing* ALEX P. SCHMID, POLITICAL TERRORISM: A RESEARCH GUIDE

TO CONCEPTS, THEORIES, DATABASES AND LITERATURE 11 (1983) ("There is hardly a

definition of terrorism that does not contain the word 'violence'") and WALTER

LAQUEUR, THE NEW TERRORISM 6 (1999) ("perhaps the only characteristic generally

agreed upon is that terrorism always involves violence or the threat of violence"),

*see also*, A20 (quoting the Oxford English Dictionary's definition of terrorism as

"[t]he unofficial or unauthorized use of violence and intimidation in the pursuit of

political aims.").

Federal law, with the *singular exception* of the AETA, mirrors this consensus. *See, e.g.,* Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801(c) (2000) (defining international terrorism as activities that "involve violent acts or acts dangerous to human life…" and "appear to be intended—(A) to intimidate or coerce a civilian population" or the Government); USA PATRIOT Act, 18 U.S.C. § 2331 (5) (defining domestic terrorism similarly); 18 U.S.C. § 2332b (defining the crime of international terrorism to require violence or substantial risk of serious bodily injury); The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (defining terrorism to require activity "dangerous to human life or potentially destructive of critical infrastructure or key resources").[17]

The District Court conceded that the AETA "encompasses a broader swath of conduct than Defendants' asserted definition of 'terrorism,' including certain non-violent damage to property" but reasoned that it also "criminalizes the 'use of violence and intimidation' (i.e., terror) against animal enterprises that the legislative history indicates Congress passed the statute to address." A22. But this ignores that Appellants challenge subsection (a)(2)(A) of the statute, not (a)(2)(B), and it also completely ignores Appellants' as-applied challenge. Causing damage or

---

[17] Similarly, the federal terrorism sentencing enhancement allows for heightened penalties for all felonies that involve or are intended to promote "a federal crime of terrorism." 18 U.S.C. Appx § 3A1.4. A "federal crime of terrorism" is defined an offense "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" *that is also* a violation of certain enumerated federal laws, each of which involves violence or damage to key infrastructure. *See* 18 U.S.C. § 2332b. Animal Enterprise Terrorism is not a qualifying offense for the terrorism enhancement. *Id.* This means that under federal law the AETA both is and is not a crime of terrorism.

loss to real or personal property is not inherently, nor even likely to be, violent. Past AETA prosecutions demonstrate this reality. *See e.g., United States v. Viehl*, No. 09-CR-119, 2010 U.S. Dist. LEXIS 2264 (D. Utah Jan. 12, 2010) (AETA prosecution for releasing 500 mink and spray-painting slogans); Plea Agreement, *United States v. Demuth*, No. 09-CR-117 (S.D. Iowa Sep. 13, 2010), ECF No. 174 (AETA prosecution for releasing ferrets from private business); Indictment, *United States v. Buddenberg*, No. 15-CR-1928, (S.D. Cal. 2015), ECF No. 1 (AETA prosecution based on multiple road trips in which defendants were alleged to have released mink from mink farms and vandalized property). So does Appellants' criminal conduct. *See* A01 (releasing mink belonging to a private company, pouring an acidic substance on two trucks, and spray-painting "Liberation is Love").[18]

And even if (a)(2)(B) were taken into account, the law is still not solely or even *primarily* aimed at violence. Indeed, an exhibit attached to the government's submissions below indicates that the FBI urged passage of the AETA *not* because of an increase in violent or dangerous acts by animal rights extremists, as "it is a relatively simple matter to prosecute extremists who are identified as responsible

---

[18] Indeed, while the District Court cited various Representatives' references to violence by animal rights activists in support of the AETA's passage, the actual threat of violence posed by the animal rights movement is small. For example, a report developed for the Department of Homeland Security noted that environmental and animal rights activists "thus far have generally refrained from harming individuals." *See* Ecoterrorism: Environmental and Animal Rights Militants in the United States, Universal Adversary Dynamic Threat Assessment, May 7, 2008, available at https://file.wikileaks.org/file/dhs-ecoterrorism-in-us-2008.pdf. *See also,* The Domestic Terrorist Threat: Background and Issues for Congress, Congressional Research Service, Jan. 17, 2013, at 11 ("[m]ost animal rights and eco-extremists also eschew physical violence directly targeting people or animals").

for committing arsons or utilizing explosive devices, using existing federal statutes" but rather because "it is often difficult if not impossible to address a campaign of *low-level* (but nevertheless organized and multi-national) criminal activity . . . in federal court." Governments' Response to Defendants' Motion to Dismiss, Dist. ECF No. 88 Ex. D, p. 4 (emphasis added).

> As one Ohio appellate court reasoned
>
> [i]magine that the General Assembly, desiring to enable the public to protect itself from the risks represented by convicted felons living within their midst, were to enact a statute designating all persons convicted of felonies as "murderers," with registration and reporting requirements, so that neighbors would wind up being advised that John Jones, a "murderer," is now living on their block. John Jones is, in fact, a person who has been convicted of an esoteric election-law felony. It is the misnaming, or mis-characterization, of the offense, that is unreasonable and arbitrary.

*State v. Reine*, No. 19157, 2003 Ohio App. LEXIS 52 (Ohio App. Jan. 10, 2003).

*Some* felons are murderers; this does not make it rational to label *all* felons "murderers." Terrorism, like murder, is a word that "the average person can be expected to understand" as referring to something specific. *Id.* Labeling that "confounds this ordinary understanding of the words used," is unreasonable and arbitrary. *See id.* Indeed, true terrorism is "trivialized if the terminology is applied loosely in situations that do not match our collective understanding of what constitutes a terrorist act." *People v. Morales*, 20 N.Y.3d 240, 249 (2012).

The AETA's prohibition on causing damage or loss to an animal enterprise (and Appellants' release of animals from fur farms and vandalizing of property) are *not* crimes of terrorism, and cannot rationally be so labeled.

## Conclusion

For the reasons set out above the District Court's decision should be reversed and the Animal Enterprise Terrorism Act struck down as facially unconstitutional.


Date:  May 9, 2016

Respectfully submitted,

<u>s/*Rachel Meeropol*</u>

Rachel Meeropol
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6432

Michael Deutsch
Peoples Law Office
1180 N Milwaukee Ave
Chicago, Illinois 60642
(773) 235-0070

Lillian McCartin
2040 N. Milwaukee Ave. Ste. 13
Chicago, Illinois 60647
(773) 727-3799

*Attorneys for Kevin Johnson*

FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite
Chicago, Illinois 60603
(312) 621-8300

Carol A. Brook
Executive Director

By:    <u>*s/ Geoffrey M. Meyer*</u>
       Geoffrey M. Meyer

*Attorney for Tyler Lang*

CERTIFICATE OF COMPLIANCE

I, Rachel Meeropol, an attorney, hereby certify that the attached Joint Brief of

Defendants-Appellants Kevin Johnson and Tyler Lang complies with the type-volume

limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 13,832

words.

*s/Rachel Meeropol*
Rachel Meeropol

Dated: May 9, 2016

CERTIFICATE OF SERVICE

I, Rachel Meeropol, an attorney, hereby certify that I served the attached Joint Brief and

Required Short Appendix of Defendants-Appellants Kevin Johnson and Tyler Lang to counsel

for Plaintiff-Appellee, Ms. Bethany Biesenthal, via ECF on May 9, 2016.

*s/Rachel Meeropol*
Rachel Meeropol

Dated: May 9, 2016

**APPENDIX**

**CERTIFICATE PURSUANT TO CIRCUIT RULE 30(d)**

All materials required by Circuit Rule 30 (a) and (b) are included in this appendix.

Respectfully submitted,
FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By: *s/ Geoffrey M. Meyer*
     Geoffrey M. Meyer

**Short Appendix Table of Contents**

| Page Number | Description |
|---|---|
| A-01 | Indictment (R. 1) |
| A-04 | March 5, 2015 Memorandum Opinion and Order (R. 112) |
| A-23 | Judgment in a Criminal Case as to Kevin Johnson (R. 150) |
| A-31 | Amended Judgment in a Criminal Case as to Tyler Lang (R. 168) |
| A-42 | Statute at Issue - 18 U.S.C. § 43 |

Case: 16-1459    Document: 8    Filed: 05/09/2016    Pages: 115

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JUL - 8 2014 μ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| KEVIN JOHNSON, | ) | Code, Section 43 |
| also known as Kevin Olliff, and | ) | |
| TYLER LANG | ) | |

**14 CR    390**

**JUDGE SHADUR**

**MAGISTRATE JUDGE MARTIN**

### COUNT ONE

The SPECIAL JANUARY 2014 GRAND JURY charges:

1.    At times material to this indictment:

a.    Mink Farm A was located in Morris, Illinois, and was in the business of breeding, raising, and selling mink to fur manufacturers.

b.    Fox Farm A was located in Roanoke, Illinois, and was in the business of breeding, raising, and selling foxes to fur manufacturers.

c.    Defendants KEVIN JOHNSON and TYLER LANG were residents of Los Angeles, California, who traveled by car throughout the United States, including, but not limited to, travel through Iowa, Wisconsin, and Illinois.

2.    Beginning no later than on or about August 5, 2013, and continuing until on or about August 15, 2013, in the Northern District of Illinois, and elsewhere,

KEVIN JOHNSON,
also known as Kevin Olliff, and
TYLER LANG,

defendants herein, conspired with each other, and with others known and unknown to the Grand Jury, to travel in interstate commerce, and to use and cause to be used a

facility of interstate and foreign commerce, for the purpose of damaging and interfering with the operations of an animal enterprise, including Mink Farm A and Fox Farm A, and in connection with that purpose, intentionally damaged and caused the loss of real and personal property (including animals and records) used by an animal enterprise, and real and personal property of a person having a connection to and relationship with an animal enterprise, which offense resulted in economic damage exceeding $10,000, in violation of Title 18, United States Code, Sections 43(a) and 43(b)(2)(A);

All in violation of Title 18, United States Code, Section 43(a)(2)(C).

## COUNT TWO

The SPECIAL JANUARY 2014 GRAND JURY further charges:

On or about August 14, 2013, at Morris, in the Northern District of Illinois, and elsewhere,

**KEVIN JOHNSON,**
also known as Kevin Olliff, and
**TYLER LANG,**

defendants herein, traveled in interstate commerce, and used and caused to be used a facility of interstate and foreign commerce, for the purpose of damaging and interfering with the operations of Mink Farm A, an animal enterprise, and in connection with that purpose, intentionally damaged and caused the loss of real and personal property (including animals and records) used by an animal enterprise, and real and personal property of a person having a connection to and relationship with an animal enterprise, which offense resulted in economic damage exceeding $10,000;

In violation of Title 18, United States Code, Sections 43(a) and 43(b)(2)(A).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.  14-CR-390 |
| | ) | |
| | ) | |
| KEVIN JOHNSON, TYLER LANG | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Defendants Kevin Johnson and Tyler Lang ("Defendants") jointly move to dismiss the criminal indictment against them.  For the reasons set forth below, the Court denies Defendants' motion.

## BACKGROUND

An indictment charged Defendants under the Animal Enterprise Terrorism Act ("AETA") with damaging an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(A), and conspiring to damage an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(C).  (R. 1, Indictment.) Specifically, the indictment alleges that Defendants caused significant damage to the property of a mink farm.  (R. 1.)

The section of the AETA defining its offense conduct states as follows:

(a)    Offense.  Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate commerce –

(1) for the purpose of damaging or interfering with the operations of an animal enterprise; and

(2) in connection with such a purpose –

(A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise;

(B) intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family…of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or

(C) conspires or attempts to do so.

Shall be punished as provided for in subsection (b).

18 U.S.C. § 43(a).  The indictment charges Defendants with violating §§ 43(a)(2)(A) and 43(a)(2)(C), but not § 43(a)(2)(B).  (R. 1.)

The AETA defines "animal enterprise" as:

(A) a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;

(B) a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or

(C) any fair or similar event intended to advance agricultural arts and sciences.

18 U.S.C. § 43(d)(1).  The AETA does not define "real or personal property."

Penalties under the AETA are based, in part, on the amount of "economic damage" that results from the offense.  "Economic damage":

(A) means the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise; but

(B) does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise.

18 U.S.C. § 43(d)(3). Finally, the AETA also contains several "Rules of Construction,"

including the following:

> Nothing in this section shall be construed—
>
> (1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution.
>
> (2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference…

18 U.S.C. §§ 43(e)(1)-(2).

Defendants move to dismiss the indictment against them, arguing that the AETA: 1) is facially overbroad because it criminalizes protected speech that causes an "animal enterprise" to lose profits or business goodwill; 2) is void for vagueness because its terms allow for and result in arbitrary and discriminatory enforcement against animal rights activists; and 3) violates substantive due process because it punishes as an act of "terrorism" non-violent damage to private property. The Court held oral argument on February 19, 2015 to provide the parties an opportunity to further elucidate their positions.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "When considering a motion to dismiss, a court assumes all facts in the indictment are true and 'must view all facts in the light most favorable to the government.'" *United States v. Fenzl*, 731 F.Supp.2d 796, 799 (N.D. Ill. 2010) (quoting *United States v. Yashar,* 166 F.3d 873, 880 (7th Cir. 1999)). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of

the required elements and that he suffered prejudice from the alleged deficiency." *United States*

*v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "[A]n indictment must state each element of the

crimes charged, provide the defendant with adequate notice of the nature of the charges so that

the accused may prepare a defense, and allow the defendant to raise the judgment as a bar to

future prosecutions for the same offense." *United States v. Nayak*, 769 F.3d 978, 979-80 (7th

Cir. 2014). An indictment also may be dismissed "if subject to a defense that raises a purely

legal question." *United States v. Boender*, 691 F.Supp.2d 833, 837 (N.D. Ill. 2010) (citing

*United States v. Labs of Virginia, Inc.,* 272 F.Supp.2d 764, 768 (N.D. Ill. 2003)). "The Fifth

Amendment guarantees the right to an indictment by grand jury and serves as a bar to double

jeopardy, while the Sixth Amendment guarantees that a defendant be informed of the charges

against him." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). In this regard,

"[t]he test for validity is not whether the indictment could have been framed in a more

satisfactory manner, but whether it conforms to minimal constitutional standards." *Vaughn*, 722

F.3d at 925 (quoting *United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003)).

## ANALYSIS

### I.     Overbreadth Challenge

Defendants first argue that the AETA is facially overbroad because it criminalizes

protected speech that causes an "animal enterprise" to lose profits or goodwill. This argument is

directed at 18 U.S.C. § 43(a)(2)(A), which criminalizes actions that "intentionally damage[] or

cause[] the loss of any real or personal property (including animals or records) used by an animal

enterprise…," but does not define "real or personal property." Defendants argue that the phrase

"intentionally damage[] or cause[] the loss of any real or personal property" includes lost profits

and other purely economic damage. Defendants therefore contend that the AETA is facially

4

overbroad because it criminalizes speech, otherwise protected by the First Amendment, which intentionally causes an animal enterprise to lose profits, but does not damage any of its physical property.

Defendants' challenge to the AETA is facial, rather than as-applied to their charged conduct. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52, 199 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612–615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)); *see also Bell v. Keating*, 697 F.3d 445, 455-56 (7th Cir. 2012) (A facial challenge "is inappropriately employed unless the statute 'substantially' criminalizes or suppresses otherwise protected speech vis-à-vis its 'plainly legitimate sweep.'") (quoting *United States v. Williams*, 553 U.S. 285, 292-93, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)).

"[T]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Stevens*, 559 U.S. 460, 474, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting *United States v. Williams*, 553 U.S. at 293, 128 S.Ct. 1830). "To prevail in such a facial challenge, a plaintiff must cross a high bar. A statute is facially overbroad only when 'it prohibits a substantial amount of protected speech.'" *Ctr. for Ind'l Freedom v. Madigan*, 697 F.3d 464, 470-71 (7th Cir. 2012) (quoting *Williams,* 553 U.S. at 292, 128 S.Ct. 1830). The Supreme Court has recognized that "[b]ecause of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the "overbreadth doctrine is 'strong medicine'" that courts should employ "'only

as a last resort.'"  *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113

(1982) (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908); *see also Williams*, 553 U.S. at 293,

128 S.Ct. 1830.  A court should "construe the statute to avoid constitutional problems, if the

statute is subject to such a limiting construction."  *Ferber*, 458 U.S. at 769 n.24, 102 S.Ct. 3348.

### A.     The Plain Language of the Statute Excludes Economic Damage

The government and Defendants each make arguments as to whether the Court should

interpret "real or personal property…used by an animal enterprise" to include (or exclude) purely

economic damages or lost profits.  *See* 18 U.S.C. § 43(a)(2)(A).  The government argues that the

statute is directed exclusively at tangible property, not intangible profits, and that the "economic

damage" definition in the penalties provision of the statute indicates that Congress intended to

exclude purely economic damages from being considered "real or personal property."  In reply,

Defendants argue that the statute is not directed exclusively at tangible property, and that the

"economic damage" definition in the penalties provision of the statute does not indicate that

Congress intended to exclude economic damages from the definition of "real or personal

property."

In construing the statute, the Court largely agrees with the government.  Reading the

offense conduct and penalties provisions in conjunction, the AETA implements a two-step

process.  In step one, the government must first prove (in addition to the other elements) that the

defendant intentionally damaged or caused the loss of any real or personal property.  In step two,

the AETA imposes penalties on the defendant based in part on the amount of "economic

damage," which is defined to include "loss of profits," that results from the offense—the greater

the lost profits, or other economic damages, the greater the penalties.  As the government argues,

the specific inclusion of the defined term "economic damage" in the penalties provision of the

statute, but not in the offense conduct, indicates that Congress did not intend to criminalize

conduct that solely causes economic loss as damage to property. *See Andrews v. Chevy Chase*

*Bank*, 545 F.3d 570, 575 (7th Cir. 2008) ("Where Congress includes particular language in one

section of a statute but omits it in another section of the same Act, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting

*Bates v. United States*, 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)).  The Court

agrees that if Congress intended to criminalize purely economic damages as damage to property,

it would have included that defined term in the offense conduct.

    The government's interpretation of the AETA is further supported by the term "used" in

the offense conduct provision.  *See* 18 U.S.C. § 43(a)(2)(A) ("[R]eal or personal property" must

be "used" by an animal enterprise.)  Defendants argue that businesses use "money," and thus the

Court should interpret "the loss of any real or personal property…used by an animal enterprise"

to include lost profits.  This interpretation asks too much of the plain language of the statute.  As

the government noted at oral argument, "money" is very different from intangible lost profits.  A

more natural reading is that the offense conduct requires damage to property used by an animal

enterprise, which cannot include purely economic damages, and then once property damage is

shown, the penalties provision takes into account a wider range of effects of the defendant's

conduct, including lost profits to the animal enterprise, in imposing a penalty.

    In addition, the penalties provision explicitly excludes from "economic damage" "any

lawful economic disruption (including a lawful boycott) that results from lawful public,

governmental, or business reaction to the disclosure of information about an animal enterprise."

18 U.S.C. § 43(d)(3)(B).  It would not make sense for the statute to criminalize the intentional

disclosure of information regarding an animal enterprise that intends to cause economic damage

(but not other property damage), and then carve an exception out of the penalties provision for losses caused by that same conduct.

**B.    Rules of Construction**

The AETA's Rules of Construction and legislative history also support the government's reading. As part of their overbreadth challenge, Defendants argue that the AETA would implicate a substantial amount of protected speech if it defined damage to property to include economic damages. Both the AETA's Rules of Construction and legislative history, however, unambiguously indicate that Congress did not intend for the AETA to infringe upon protected First Amendment speech. The AETA's "Rules of Construction" state that "[n]othing in this section shall be construed…to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 43(e)(1). In interpreting this provision, the First Circuit recently held in a pre-enforcement civil challenge to the AETA that it "preclude[s] an interpretation according to which protected speech activity resulting in lost profits gives rise to liability." *Blum v. Holder*, 744 F.3d 790, 801 (1st Cir. 2014).[1]

The legislative history of the AETA also strongly indicates that Congress did not intend for it to infringe upon First Amendment-protected expression. It contains, for example, the following statements of Congressional intent: "It goes without saying that first amendment freedoms of expression cannot be defeated by statute. However, to reassure anyone concerned with the intent of this legislation, we have added in the bill assurances that it is not intended as a restraint on freedoms of expression such as lawful boycotting, picketing or otherwise engaging in

---

[1] In *Blum*, several animal rights activists brought a pre-enforcement civil challenge to the AETA on constitutional grounds based on their fear of prosecution. The First Circuit held based on its reading of the statute that the activists lacked standing because their fear of prosecution was speculative. *Blum*, 744 F.3d at 803. Although the procedural posture of *Blum* was different, the Court agrees with the First Circuit's application of the Rules of Construction to the property damage provision in 18 U.S.C. § 43(a)(2)(A).

lawful advocacy for animals." 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep.

Scott). "I fully recognize that peaceful picketing and public demonstrations against animal

testing should be recognized as part of our valuable and sacred right to free expression. For this

reason, all conduct protected by the First Amendment is expressly excluded from the scope of

this legislation. This law effectively protects the actions of the law-abiding protestor while

carefully distinguishing the criminal activity of extremists." 152 Cong. Rec. S9254-01, 2006

WL 2582709 (statement of Sen. Feinstein).

Thus, both the Rules of Construction and the legislative history indicate that Congress

explicitly did not intend for the AETA to criminalize protected First Amendment speech. In

contrast, Defendants' argument shows the extent to which, under their reading, the statute would

infringe upon First Amendment rights. Defendants cite as an example the recent documentary

*Blackfish*, which sharply criticized SeaWorld for its treatment of killer whales, and which

Defendants claim caused SeaWorld to lose $925 million in market capitalization. Defendants

contend that the making of Blackfish meets all of the elements of an AETA violation, notably

because it intended to cause SeaWorld, an animal enterprise, to lose profits. In light of the Rules

of Construction and the legislative history, it is evident that Congress expressly did not intend for

the AETA to criminalize such clearly protected First Amendment expression.

Defendants also argue that the Court should not interpret the AETA in light of its Rules

of Construction because a "savings clause" cannot "operate to save an otherwise invalid statute."

*See CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985). That principle is not applicable under

the circumstances here. As Defendants agreed at oral argument, if a statute is "legitimately open

to more than one interpretation," one of which is constitutional and the other is not, a savings

clause can indicate that the constitutional interpretation is correct. (2/19/2015 Tr.) For example,

*CISPES v. F.B.I.*, cited by Defendants, stated the following in upholding a different statute against a First Amendment overbreadth challenge based in part on a similar "savings clause":

> Of course, such a provision cannot substantively operate to save an otherwise invalid statute, since it is a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments. However, it is a valuable indication of Congress' concern for the preservation of First Amendment rights in the specific context of the statute in question. Thus, it serves to validate a construction of the statute which avoids its application to protected expression.

*CISPES v. F.B.I.*, 770 F.2d at 474. As discussed above, the Court agrees with the government that the AETA excludes purely economic damages from "the loss of any real or personal property" under § 43(a)(2)(A). The Rules of Construction, as well as the AETA's legislative history, serve to validate this interpretation of the statute, which limits it from applying to a significant amount of protected First Amendment expression.

As a final matter on overbreadth, Defendants propose additional hypotheticals that they contend render the AETA overbroad. Even if Defendants could posit a situation in which the statute raised First Amendment concerns, "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Williams*, 553 U.S. at 303, 128 S.Ct. 1830. The AETA is directed at property damage, threats, and violence toward animal enterprises—any stray impermissible applications of the law are not substantial "when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. at 52, 199 S.Ct. 1849 (quotation omitted).

For these reasons, the Court denies Defendants' overbreadth challenge.

## II.    Void for Vagueness

Defendants next argue that the AETA is facially void for vagueness because "animal enterprise" is broadly defined to include any "commercial or academic enterprise that uses or sells animals or animal products for profit…" 18 U.S.C. § 43(d)(1)(a). Because the statute

criminalizes acts that "intentionally damage[] or cause[] the loss of any real or personal property (including animals or records) used by an animal enterprise," Defendants argue that the statute makes every act of theft, libel, or vandalism against any food or retail store in the country a federal crime, as long as there is an interstate component.  This broad provision provides law enforcement, according to Defendants, with "maximum discretion," and invites arbitrary and discriminatory enforcement of the AETA.

"A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both." *Bell v. Keating*, 697 F.3d at 455.  Here, Defendants allege only the second type of vagueness claim, that the AETA invites arbitrary and discriminatory enforcement. Such a claim must show that the statute "impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'"  *Id*. at 462 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).  A statute is not void for vagueness, however, "simply because it requires law enforcement to exercise some degree of judgment."  *Bell*, 697 F.3d at 462.  "To the contrary, due process rejects 'sweeping standard[s] [that] place[ ] unfettered discretion in the hands of police, judges, and juries to carry out arbitrary and erratic arrests and convictions.'"  *Id*. at 462-63 (quoting *Wright v. New Jersey,* 469 U.S. 1146, 1151, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985)).  To put it differently, a statute must not "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 165, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

As an initial matter, at oral argument the government asserted that Defendants only have standing to bring an as-applied challenge (rather than a facial challenge) to the AETA on

11

vagueness grounds because Defendants are not alleging that the AETA's potential for arbitrary and discriminatory enforcement impacts their First Amendment rights.  *See United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009) ("Unless a vagueness challenge threatens a First Amendment interest, a court must examine the challenge on an 'as-applied' basis—that is, whether the statute is unconstitutionally vague in light of the facts of the case at hand.")  In response, Defendants argue that courts allow a defendant to bring a facial vagueness challenge against a statute that is also vague as applied to him.  (*See* 2/19/2015 Tr.)  As Defendants contend that their facial and as-applied arguments are essentially the same, the Court proceeds to address the merits of their argument.  (*See* 2/19/2015 Tr.)  (Defendants' counsel stating that "…at the end of the day, it doesn't make that much of a difference because [Defendants'] vagueness argument is the same in either regard.  It's that the statute invites arbitrary and discriminatory enforcement.  And if that's the case, then there's no reason why that also wouldn't follow with respect to this individual prosecution.")

The Court agrees with the government that the AETA's broad definition of animal enterprise does not support a vagueness challenge based on its potential for arbitrary and discriminatory enforcement.  The cases upon which Defendants rely all address statutes that define criminal conduct much more vaguely than the definition of criminal conduct at issue here.  In *Papachristou*, for example, the Supreme Court invalidated a statute that read as follows:

> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished…

*Papachristou v. City of Jacksonville*, 405 U.S. at 157 n.1, 92 S.Ct. 839.  The Supreme Court

found this law unconstitutional in part because it criminalized such a broad range of conduct that

it necessarily would lead to arbitrary and discriminatory enforcement by the police.  *See id*. at

162, 92 S.Ct. 839 ("[t]his ordinance is void for vagueness, both in the sense that it fails to give a

person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the

statute, and because it encourages arbitrary and erratic arrests and convictions.") (quotation

omitted).  The Court held that because the law contained "no standards governing the exercise of

the discretion [it] granted," it "furnish[ed] a convenient tool for harsh and discriminatory

enforcement by local prosecuting officials, against particular groups deemed to merit their

displeasure," such as "poor people, nonconformists, dissenters, [and] idlers."  *Id*. at 170, 92 S.Ct.

839 (quotation omitted).  Likewise, in *Bell v. Keating*, the Seventh Circuit recently struck down

portions of a Chicago disorderly conduct ordinance because of its susceptibility to discriminatory

and arbitrary enforcement.  *Bell*, 697 F.3d at 463.  The ordinance at issue in *Bell* criminalized an

individual's behavior when he "knowingly…fails to obey a lawful order of dispersal by a person

known by him to be a peace officer under circumstances where three or more persons are

committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause

substantial harm or serious inconvenience, annoyance or alarm."  *Id*. at 450.  The court held that

that provision as applied to acts of disorderly conduct that "are likely to cause…serious

inconvenience, annoyance, or alarm" gave too much discretion to police.  *Id*. at 463.

Here, the AETA much more clearly defines the conduct it criminalizes.  In order to

violate the section of the AETA challenged by Defendants, an individual must, among other

requirements, "intentionally damage[] or cause the loss of any real or personal property

(including animals or records) used by an animal enterprise."  18 U.S.C. § 43(a)(2)(A).  Unlike

the other statutes cited by Defendants, this provision narrowly targets acts that intentionally cause property damage or loss. Further, the AETA imposes the additional *mens rea* requirement that an individual act "for the purpose of damaging or interfering with the operations of an animal enterprise." 18 U.S.C. § 43(a)(1). The AETA's proscribed conduct is simply not the type of "sweeping standard" that gives unfettered discretion to law enforcement. In other words, law enforcement does not have discretion to determine whether a vague term amounts to criminal conduct. The underlying criminal activity is clearly proscribed. Although Defendants argue that the AETA criminalizes conduct taken against a large number of entities because the definition of "animal enterprise" is broad, the fact that the AETA criminalizes clearly defined conduct against a wide range of potential victims does not lead to "arbitrary and erratic arrests and convictions." *Bell*, 697 F.3d at 462-63.

In addition, Defendants' argument that the AETA will result in arbitrary and discriminatory enforcement because it "over-federalizes" conduct, such as vandalism, that is already criminalized at the state or local level is not persuasive. Defendants, in fact, conceded at oral argument that they do not have any supporting authority for the argument that a statute can be void for vagueness based on this theory. (2/19/2015 Tr.)[2] Indeed, the Seventh Circuit has held that "without some showing that either the statute[] in question or the prosecution of this case contravene some specific rule of constitutional or statutory law, the mere fact that the conduct in question is of a sort traditionally dealt with through state law cannot serve as a basis

---

[2] Defendants only cite to a recent order in *Johnson v. United States*, 135 S.Ct. 939 (2015) that requests briefing on "[w]hether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(B)(ii), is unconstitutionally vague." The issue there though is whether the language in a federal criminal statute that increases the maximum sentence for defendants with past convictions (including state convictions) involving "conduct that presents a serious risk of physical injury to another" is void for vagueness. *See Sykes v. United States*, 131 S.Ct. 2267, 2287, 180 L.Ed.2d 60 (2011) (Scalia, J., dissenting). The dispute is over the clarity of the statute, not whether a federal statute can criminalize conduct that has traditionally been prohibited only at the state level. Further, the Supreme Court has not yet issued a ruling on the merits of the case.

for dismissing the indictment." *United States v. Hausmann*, 345 F.3d 952, 959 (7th Cir. 2003) (quotation omitted). Defendants do not persuade the Court that it can or should depart from that principle here.

Finally, the Court does not agree with Defendants that the AETA targets animal rights activists for arbitrary and discriminatory enforcement. As discussed above, the AETA strikes a balance between protecting the First Amendment rights of activists and punishing the criminal conduct of extremists who target animal enterprises. *See* 152 Cong. Rec. S9254-01, 2006 WL 2582709 (statement of Sen. Feinstein) ("This law effectively protects the actions of the law-abiding protestor while carefully distinguishing the criminal activity of extremists"); 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Scott) ("While we must protect those engaged in animal enterprises, we must also protect the right of those engaged in first amendment freedoms of expression regarding such enterprises.") That is not a basis for a vagueness challenge. For these reasons, the Court denies Defendants' motion to dismiss on the grounds that the AETA is void for vagueness.

## III.     Substantive Due Process

Defendants finally argue that the AETA violates substantive due process, both facially and as-applied to Defendants' conduct, because it punishes as an act of "terrorism" non-violent property damage. This argument is based solely on the inclusion of the term "terrorism" in the title of the "Animal Enterprise Terrorism Act," and the AETA's stated purpose "[t]o provide the Department of Justice the necessary authority to apprehend, prosecute, and convict individuals committing animal enterprise terror." Animal Enterprise Terrorism Act, S. 3880, Pub. L. 109-374, 109th Cong. (2006).[3] Defendants concede that the right not to be "labeled" by a conviction

---

[3] While the title of the law as enacted is the "Animal Enterprise Terrorism Act," the statute is actually codified as "Force, violence, and threats involving animal enterprises." *See* 18 U.S.C. § 43.

15

under a statute with a title that does not apply to one's conduct is not a "fundamental" right, but argue that it is nonetheless a "non-fundamental" right. Defendants then assert that the AETA cannot survive the rational basis review applicable to non-fundamental rights.

For non-fundamental rights, "there is a residual substantive limit on government action which prohibits arbitrary deprivations of liberty by government." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). "Where a non-fundamental liberty—sometimes described as a 'harmless liberty'—is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest." *Id.* (citation omitted). "It is irrelevant whether the reasons given actually motivated the legislature; rather, the question is whether some rational basis exists upon which the legislature could have based the challenged law." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). "Those attacking a statute on rational basis grounds have the burden to negate 'every conceivable basis which might support it.'" *Id.*

As an initial matter, Defendants contend that the AETA deprives individuals of the right not to have a misleading label attached to one's serious crime. In support, Defendants cite a number of cases in the sex offender registration context that they contend are analogous. In *People v. Knox*, for example, the Court of Appeals of New York addressed a challenge to a New York state requirement that any person convicted of kidnapping an individual under the age of seventeen, who is not that person's child, register as a sex offender under New York's Sex Offender Registration Act. *People v. Knox*, 903 N.E.2d 1149 (N.Y. 2009). Although the court in *Knox* denied the defendants' challenge to the registration requirement on rational basis grounds, it agreed that the defendants had "a constitutionally-protected liberty interest,

16

applicable in a substantive due process context, in not being required to register under an

incorrect label." *Id*. at 1152. The AETA, however, does not impose a similar registration

requirement. Further, it is not clear that the AETA "labels" Defendants as terrorists. The text of

the AETA contains no reference to "terrorism," the government need not prove that Defendants

committed a crime of "terror" to convict them, and an AETA conviction would not make

Defendants eligible for the terrorism sentencing enhancement. *See* U.S.S.G. § 3A1.4

(referencing definition contained in 18 U.S.C. § 2332b(g)(5)).

Defendants also argue, however, that an AETA conviction could lead to the Bureau of

Prisons placing them in restrictive prison units because their conviction is terrorism-related. At

oral argument, the government conceded that based solely on the title of the AETA, as part of the

Bureau of Prisons' process for determining a defendant's designation, a defendant convicted

under the AETA will automatically have his case "seen by a counter terrorism unit employee."

(2/19/2015 Tr.) The Court need not decide, however, whether the title of the AETA on its own

infringes upon any rights of Defendants. Instead, assuming without deciding that Defendants

properly articulate a non-fundamental right that the AETA infringes, the Court finds that the

AETA's title and purpose pass rational basis review.

First, the Court disagrees with Defendants that there was not a rational basis for including

the terms "terror" and "terrorism" in the purpose and title of the AETA, respectively. In making

their argument that the statute is not "rationally related" to terrorism, Defendants assert that

although there is not one universally accepted definition of "terrorism," "there is 'a consensus'

that violence is a universal component." (R. 63, Def.'s Mot. at 22.) The Oxford English

Dictionary defines "terrorism" as "[t]he unofficial or unauthorized use of violence and

intimidation in the pursuit of political aims." *Oxford English Dictionary* (online ed.). It is clear

that Congress was driven by these types of conceptions of terrorism in passing the AETA.

Indeed, the legislative history of the AETA is replete with examples showing that the passage of

the AETA was motivated by preventing violence and intimidation against animal enterprises and

associated individuals:

> "In recent years, some animal rights activist groups have employed violence and
> intimidation against enterprises that use or sell animals or animal products…"

152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Sensenbrenner).

> "Victims have experienced threatening letters, e-mails and phone calls, repeated
> organized protests at their homes and the blanketing of their neighborhoods with
> defamatory literature.  Some of the more violent acts by these groups include arson,
> pouring acid on cars, mailing razor blades, and defacing victims' homes."

*Id*.

> "Scientists around [Wisconsin] have received, in the mail or at their home, razor blades
> with letters stating that they were laced with the AIDS virus.  Personal information such
> as home addresses, phone numbers, and photographs of researchers have been posted on
> extremist Web sites.  Many of these same scientists report death threats and home visits
> by animal rights extremists…"

*Id*. (statement of Rep. Petri).

> "We have found that [certain individuals] are complaining that they are now being
> stalked, harassed, intimidated or threatened, with some individuals even being physically
> assaulted, and had their homes, businesses or cars vandalized.  Since the Animal
> Enterprise Terrorism law was enacted in 1992, there have been some 1,100 complaints of
> such incidents, with property losses reported of being more than $120 million."

*Id*. (statement of Rep. Scott).

Accordingly, the title and purpose of the statute easily pass rational basis review.

Defendants' argument that the text of the AETA is not rationally related to its title or

purpose is also not persuasive.  As discussed above, the AETA criminalizes conduct taken for

the "purpose of damaging or interfering with the operations of an animal enterprise," that either

"intentionally damages or causes the loss of any real or personal property…used by an animal

enterprise," or "intentionally places a person in reasonable fear of…death…or serious bodily

injury… by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation."  18 U.S.C. § 43(a)(2).  Although the offense encompasses a broader swath of conduct than Defendants' asserted definition of "terrorism," including certain non-violent damage to property, there is no doubt that it also criminalizes the "use of violence and intimidation" (i.e., terror) against animal enterprises that the legislative history indicates Congress passed the statute to address.  Defendants do not show that the text of the statute casts such a wide net that it bears no rational relationship to that legitimate purpose.  *See Goodpaster*, 736 F.3d at 1071 ("[t]he law must merely bear a rational relationship to some legitimate end.") (quotation omitted).

Accordingly, the Court denies Defendants' motion to dismiss the indictment on the basis that it violates Defendants' substantive due process rights.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss the indictment.


**DATED:  March 5, 2015**                                    **ENTERED**

                                                             _____
                                                             AMY J. ST. EVE
                                                             U.S. District Court Judge



# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| KEVIN JOHNSON | ) | Case Number:    14 CR 390-1 |
| | ) | USM Number:    47353-424 |
| | ) | |
| | ) | |
| | ) | Michael Deutsch |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s) one of the indictment.

☐ pleaded nolo contendere to count(s)          which was accepted by the court.

☐ was found guilty on count(s)          after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| **18 U.S.C. 43(a)(2)(C)** | Conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise | 08/15/2013 | ONE |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Any remaining counts are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

February 29, 2016
Date of Imposition of Judgment

_____
Signature of Judge

Amy J. St. Eve, United States District Judge
Name and Title of Judge

2-29-16
Date

2016 MAR -1 AM 11:49

ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 2 – Imprisonment                                                                                                 Judgment – Page 2 of 8

DEFENDANT: KEVIN JOHNSON
CASE NUMBER: 14 CR 390-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
22 months (The court imposed a sentenced of 36 months but gave the defendant a 14 month credit for his state court sentence. This 14 month credit includes the 4 months covering the time of the indictment in this case to the defendant's transfer back to state custody for a total term of 22 months).

☒ The court makes the following recommendations to the Bureau of Prisons: That the defendant be placed at a Bureau of Prisons facility in
    Lompoc, California.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at      on

    ☐ as notified by the United States Marshal.

    ☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

        ☐ before 2:00 pm on

        ☐ as notified by the United States Marshal.

        ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 3 – Supervised Release Case: 16-1459    Document: 8    Filed: 05/09/2016    Pages: 115 Judgment – Page 3 of 8

DEFENDANT: KEVIN JOHNSON
CASE NUMBER: 14 CR 390-1

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
three years.

      You must report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
☒  (1)  you shall not commit another Federal, State, or local crime.
☒  (2)  you shall not unlawfully possess a controlled substance.
☐  (3)  you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence. [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]
☐  (4)  you shall register and comply with all requirements of the Sex Offender Registration and Notification Act **(42 U.S.C. § 16913)**.
☒  (5)  you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.
☒  (6)  you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D)**; such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
☒  (1)  you shall provide financial support to any dependents if financially able.
☒  (2)  you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A)**).
☐  (3)  you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows: 
☒  (4)  you shall seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip you for employment.
☐  (5)  you shall refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s)) .
☒  (6)  you shall refrain from knowingly meeting or communicating with any person whom you know to be engaged, or planning to be engaged, in criminal activity and from:
      ☐ visiting the following type of places: .
      ☐ knowingly meeting or communicating with the following persons: 
☒  (7)  you shall refrain from ☐ any or ☒ excessive use of alcohol (defined as ☒ having a blood alcohol concentration greater than 0.08; or ☐ ), or any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.
☒  (8)  you shall refrain from possessing a firearm, destructive device, or other dangerous weapon.
☒  (9)  ☐ you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.
      ☒ you shall participate, at the direction of a probation officer, in a mental health treatment program, which may include the use of prescription medications.
      ☐ you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: .)
☐  (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling [no more than the lesser of one year or the term of imprisonment authorized for the

A-25

Case: 1:14-cr-00390 Document #: 150 Filed: 02/29/16 Page 4 of 8 PageID #:900
ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case Case: 16-1459    Document: 8    Filed: 05/09/2016    Pages: 115 Judgment – Page 4 of 8
Sheet 3 – Supervised Release

DEFENDANT:  KEVIN JOHNSON
CASE NUMBER:  14 CR 390-1

offense], during the first year of the term of supervised release (provided, however, that a condition set forth in **§ 3563(b)(10)** shall be imposed only for a violation of a condition of supervised release in accordance with **§ 3583(e)(2)** and only when facilities are available) for the following period ▓▓▓.

☐ (11) (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of ▓▓▓ months.

☐ (12) you shall work in community service for ▓▓▓ hours as directed by a probation officer.

☐ (13) you shall reside in the following place or area: ▓▓▓, or refrain from residing in a specified place or area: ▓▓▓.

☒ (14) you shall remain within the jurisdiction where you are being supervised, unless granted permission to leave by the court or a probation officer.

☒ (15) you shall report to a probation officer as directed by the court or a probation officer.

☒ (16) ☒ you shall permit a probation officer to visit you ☒ at any reasonable time or ☐ as specified: ▓ ,
         ☒ at home          ☒ at work          ☒ at school          ☒ at a community service location
         ☒ other reasonable location specified by a probation officer
      ☒ you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒ (17) you shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

☒ (18) you shall notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer.

☐ (19) (home confinement): you shall remain at your place of residence for a total of ▓▓▓ months during nonworking hours. [This condition may be imposed only as an alternative to incarceration.]

      ☐ Compliance with this condition shall be monitored by telephonic or electronic signaling devices (the selection of which shall be determined by a probation officer). Electronic monitoring shall ordinarily be used in connection with home detention as it provides continuous monitoring of your whereabouts. Voice identification may be used in lieu of electronic monitoring to monitor home confinement and provides for random monitoring of your whereabouts. If the offender is unable to wear an electronic monitoring device due to health or medical reasons, it is recommended that home confinement with voice identification be ordered, which will provide for random checks on your whereabouts. Home detention with electronic monitoring or voice identification is not deemed appropriate and cannot be effectively administered in cases in which the offender has no bona fide residence, has a history of violent behavior, serious mental health problems, or substance abuse; has pending criminal charges elsewhere; requires frequent travel inside or outside the district; or is required to work more than 60 hours per week.

      ☐ You shall pay the cost of electronic monitoring or voice identification at the daily contractual rate, if you are financially able to do so.

      ☐ The Court waives the electronic/location monitoring component of this condition.

☐ (20) you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐ (21) (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not reenter the United States without obtaining, in advance, the express written consent of the Attorney General or the Secretary of the Department of Homeland Security.

☒ (22) you shall satisfy such other special conditions as ordered below.

☐ (23) (if required to register under the Sex Offender Registration and Notification Act) you shall submit at any time, with or without a warrant, to a search of your person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects, by any law enforcement or probation officer having reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by you, and by any probation officer in the lawful discharge of the officer's supervision functions (see special conditions section).

☐ (24) Other:

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐ (1) if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☐ (2) you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐ (3) you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off

A-26

Case: 1:14-cr-00390 Document #: 150 Filed: 02/29/16 Page 5 of 8 PageID #:901
ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 3 – Supervised Release   Case: 16-1459      Document: 8      Filed: 05/09/2016      Pages: 115 Judgment – Page 5 of 8

DEFENDANT: KEVIN JOHNSON
CASE NUMBER: 14 CR 390-1

from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed [___] hours.

☐ (4)  you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒ (5)  you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒ (6)  you shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

☒ (7)  you shall notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

☐ (8)  you shall provide documentation to the IRS and pay taxes as required by law.

☐ (9)  you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

    ☐ You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

    ☐ The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

    ☐ You shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

    ☐ You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

    ☐ You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2)**, regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

    ☐ You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, or visit locations where children regularly congregate (*e.g.*, locations specified in the Sex Offender Registration and Notification Act.)

    ☐ This condition does not apply to your family members: [___] [Names]

    ☐ Your employment shall be restricted to the district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

    ☐ You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

    ☐ You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☒ (10)  you shall pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release. Your monthly payment schedule shall be an amount that is at least 10% of your net monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance, and employment-related expenses.

☒ (11)  you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

☐ (12)  you shall repay the United States "buy money" in the amount of $ [___] which you received during the commission of this offense.

☐ (13)  if the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk.

ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 3 – Supervised Release    Judgment – Page 6 of 8

DEFENDANT:  KEVIN JOHNSON
CASE NUMBER:  14 CR 390-1

☒   (14)   Other: You shall report to the probation officers as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

Absent any constitutional privilege, you shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

You shall reside at, or participate in, the Beit T'Shuvah Alternative Sentencing program until successful completion of the program, up to a period of 12 months.  Defendant is to enter the program at soon as a space is available upon his release from incarceration.

ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties — Judgment – Page 7 of 8

DEFENDANT:  KEVIN JOHNSON
CASE NUMBER:  14 CR 390-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| Totals | $100.00 | $waived | $200,000.00 |

☐ The determination of restitution is deferred until        . An *Amended Judgment in a Criminal  Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Robert R. |  | 200,000.00 |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **Totals:** |  | **$200,000.00** |  |

☒ Restitution amount ordered pursuant to plea agreement $ 200,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to **18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒ the interest requirement is waived for the restitution.

    ☐ the interest requirement for the        is modified as follows:

☐ The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Findings for the total amount of losses are required under **Chapters 109A, 110, 110A, and 113A of Title 18** for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245B (Rev. 02/22/2016) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Judgment – Page 8 of 8

DEFENDANT: KEVIN JOHNSON
CASE NUMBER: 14 CR 390-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $200,100.00 due immediately.

     ☐ balance due not later than     , or

     ☒ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal     *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within    *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:
The defendant's monthly payment schedule shall be an amount that is at least 10% of defendant's net monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|
| Kevin Johnson, 14 CR 390-1 and Tyler Lang, 14 CR 390-2 | $200,000.00 | $200,000.00 | Robert R. |

☒ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| TYLER LANG | Case Number:     14 CR 390-2 |

USM Number:    67962-112

**Date of Original Judgment: 03/23/2016**
**(Or Date of Last Amended Judgment)**

Geoffrey Meyer
Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☒ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant    ☐ 28 U.S.C. § 2255 or    ☐ 18 U.S.C. § 3559(c)(7)

☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☒ pleaded guilty to count(s) one of the indictment.

☐ pleaded nolo contendere to count(s)     which was accepted by the court.

☐ was found guilty on count(s)     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 43(a)(2)(C), 18 U.S.C. 43(b)(2)(A) | Conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise | 08/15/2013 | ONE |

The defendant is sentenced as provided in pages 2 through 2 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. **Other than the amendments or modifications stated in this judgment, the judgment previously entered shall stand. (See attachments)**

☐ The defendant has been found not guilty on count(s)

☒ Any remaining counts are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

April 5, 2016
Date of Imposition of Judgment

Signature of Judge

Amy J. St. Eve, United States District Judge
Name and Title of Judge

Date 4-5-16

A TRUE COPY-ATTEST
THOMAS G. BRUTON, CLERK

BY _____
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS

DATE: 4-7-16

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
1 day on count one of the indictment, time considered served.

☐    The court makes the following recommendations to the Bureau of Prisons:

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

     ☐   at      on

   ☐   as notified by the United States Marshal.

   ☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   before 2:00 pm on

     ☐   as notified by the United States Marshal.

     ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this
judgment.

                   _____

                   UNITED STATES MARSHAL

By   _____

       DEPUTY UNITED STATES MARSHAL

# UNITED STATES DISTRICT COURT
Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| **TYLER LANG** | ) | Case Number:    14 CR 390-2 |
| | ) | USM Number:    67962-112 |
| | ) | |
| | ) | |
| | ) | Geoffrey Meyer |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s) one of the indictment.
☐ pleaded nolo contendere to count(s)        which was accepted by the court.
☐ was found guilty on count(s)        after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 43(a)(2)(C), | Conspiring to travel in interstate commerce with the purpose of | 08/15/2013 | ONE |
| 18 U.S.C. 43(b)(2)(A) | damaging an animal enterprise | | |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Any remaining counts are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

March 23, 2016
Date of Imposition of Judgment

Signature of Judge

Amy J. St. Eve, United States District Judge
Name and Title of Judge

3-23-16
Date

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
3 months on count one of the indictment, time considered served.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at       on

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2:00 pm on

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this judgment.


                                    _____
                                     UNITED STATES MARSHAL

By   _____
                DEPUTY UNITED STATES MARSHAL

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
1 year on count one of the indictment.

       You must report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒ (1) you shall not commit another Federal, State, or local crime.

☒ (2) you shall not unlawfully possess a controlled substance.

☐ (3) you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence. [Use for a first conviction of a domestic violence crime, as defined in § 3561(b).]

☐ (4) you shall register and comply with all requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16913).

☒ (5) you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

☒ (6) you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in § 3553(a)(1) and (a)(2)(B), (C), and (D); such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in § 3553 (a)(2) (B), (C), and (D); and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994a. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☐ (1) you shall provide financial support to any dependents if financially able.

☒ (2) you shall make restitution to a victim of the offense under § 3556 (but not subject to the limitation of § 3663(a) or § 3663A(c)(1)(A)).

☐ (3) you shall give to the victims of the offense notice pursuant to the provisions of § 3555, as follows:

☒ (4) you shall seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip you for employment.

☐ (5) you shall refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s))    .

☒ (6) you shall refrain from knowingly meeting or communicating with any person whom you know to be engaged, or planning to be engaged, in criminal activity and from:
    ☒ visiting the following type of places: where controlled substances are illegally sold, used, distributed or administered.
    ☒ knowingly meeting or communicating with the following persons: any person convicted of a felony unless granted permission to do so by the probation officer.

☒ (7) you shall refrain from ☐ any or ☐ excessive use of alcohol (defined as ☒ having a blood alcohol concentration greater than 0.08), or any use of a narcotic drug or other controlled substance, as defined in § 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner.

☒ (8) you shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

☐ (9) ☐ you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.
    ☐ you shall participate, at the direction of a probation officer, in a mental health treatment program, which may include the use of prescription medications.
    ☐ you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify:    .)

A-35

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

- [ ] (10) (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling _____ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in § 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with § 3583(e)(2) and only when facilities are available) for the following period _____.

- [x] (11) (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of 6 months to begin after the 6 months term of home confinement.

- [ ] (12) you shall work in community service for _____ hours as directed by a probation officer.
- [ ] (13) you shall reside in the following place or area: _____, or refrain from residing in a specified place or area: _____.
- [x] (14) you shall remain within the jurisdiction where you are being supervised, unless granted permission to leave by the court or a probation officer.
- [x] (15) you shall report to a probation officer as directed by the court or a probation officer.
- [x] (16)  [x] you shall permit a probation officer to visit you [x] at any reasonable time or [ ] as specified: _____,
  - [x] at home    [x] at work    [x] at school    [x] at a community service location
  - [ ] other reasonable location specified by a probation officer
  - [x] you shall permit confiscation of any contraband observed in plain view of the probation officer.

- [ ] (17) you shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- [x] (18) you shall notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer.
- [x] (19) (home confinement)(to be served before the period of community confinement): you shall remain at your place of residence for a total of 6 months during nonworking hours. [This condition may be imposed only as an alternative to incarceration.]
  - [x] Compliance with this condition shall be monitored by telephonic or electronic signaling devices (the selection of which shall be determined by a probation officer). Electronic monitoring shall ordinarily be used in connection with home detention as it provides continuous monitoring of your whereabouts. Voice identification may be used in lieu of electronic monitoring to monitor home confinement and provides for random monitoring of your whereabouts. If the offender is unable to wear an electronic monitoring device due to health or medical reasons, it is recommended that home confinement with voice identification be ordered, which will provide for random checks on your whereabouts. Home detention with electronic monitoring or voice identification is not deemed appropriate and cannot be effectively administered in cases in which the offender has no bona fide residence, has a history of violent behavior, serious mental health problems, or substance abuse; has pending criminal charges elsewhere; requires frequent travel inside or outside the district; or is required to work more than 60 hours per week. Electronic monitoring shall be imposed to the extent it is a requirement for home confinement in the District where the offender is supervised.
  - [x] You shall pay the cost of electronic monitoring or voice identification at the daily contractual rate, if you are financially able to do so.
  - [ ] The Court waives the electronic/location monitoring component of this condition.

- [ ] (20) you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

- [ ] (21) (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not reenter the United States without obtaining, in advance, the express written consent of the Attorney General or the Secretary of the Department of Homeland Security.

- [ ] (22) you shall satisfy such other special conditions as ordered below.
- [ ] (23) (if required to register under the Sex Offender Registration and Notification Act) you shall submit at any time, with or without a warrant, to a search of your person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects, by any law enforcement or probation officer having reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by you, and by any probation officer in the lawful discharge of the officer's supervision functions (see special conditions section).

- [ ] (24) Other:

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**
- [ ] (1) if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

               Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☐ (2)    you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐ (3)    you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed ____ hours.

☐ (4)    you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒ (5)    you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒ (6)    you shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

☒ (7)    you shall notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

☐ (8)    you shall provide documentation to the IRS and pay taxes as required by law.

☐ (9)    you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

        ☐    You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

        ☐    The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

        ☐    You shall not possess or use any device with access to any online computer service at any location (including place of employment) without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system.

        ☐    You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

        ☐    You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to 18 U.S.C. § 3583(e)(2), regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

        ☐    You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, or visit locations where children regularly congregate (e.g., locations specified in the Sex Offender Registration and Notification Act.)

        ☐    This condition does not apply to your family members: ____ [Names]

        ☐    Your employment shall be restricted to the district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

        ☐    You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

        ☐    You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☒ (10)    you shall pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release. Your monthly payment schedule shall be an amount that is at least 10% of your net monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance, and employment-related expenses.

☒ (11)    you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

☐ (12)    you shall repay the United States "buy money" in the amount of $ ____ which you received during the commission of this offense.

DEFENDANT: TYLER LANG

CASE NUMBER: 14 CR 390-2

☒ (13) if the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk.

☒ (14) Other: report to the probatoin officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

notify the probation officer at least ten days prior to any change in residence or employment.

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals** | $100.00 | $waived | $200,000.00 |

☐ The determination of restitution is deferred until        . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Robert R. | | $200,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Totals:** | | **$200,000.00** | |

☒ Restitution amount ordered pursuant to plea agreement $ 200,000.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the restitution.

☐ the interest requirement for the        is modified as follows:

☐ The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Findings for the total amount of losses are required under **Chapters 109A, 110, 110A, and 113A of Title 18** for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A    ☒    Lump sum payment of $200,100.00 due immediately.

        ☐    balance due not later than         , or

        ☒    balance due in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

B    ☐    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C    ☐    Payment in equal        (e.g. weekly, monthly, quarterly) installments of $      over a period of        (e.g., months or years), to
        commence        (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal        (e.g. weekly, monthly, quarterly) installments of $      over a period of        (e.g., months or years), to
        commence        (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E    ☐    Payment during the term of supervised release will commence within        (e.g., 30 or 60 days) after release from imprisonment.
        The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☒    Special instructions regarding the payment of criminal monetary penalties:
        The defendant's monthly payment schedule shall be an amount that is at least 10% of defendant's net monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒    Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|
| Kevin Johnson, 14 CR 390-1<br>and Tyler Lang, 14 CR 390-2 | $200,000.00 | $200,000.00 | Robert R. |

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

DEFENDANT: TYLER LANG
CASE NUMBER: 14 CR 390-2

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  Lump sum payment of $200,100.00 due immediately.

      ☐  balance due not later than     , or

      ☒  balance due in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal     (e.g. weekly, monthly, quarterly) installments of $     over a period of     (e.g., months or years), to
      commence     (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal     (e.g. weekly, monthly, quarterly) installments of $     over a period of     (e.g., months or years), to
      commence     (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within     (e.g., 30 or 60 days) after release from imprisonment.
      The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:
      The defendant's monthly payment schedule shall be an amount that is at least 10% of defendant's net monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|
| Kevin Johnson, 14 CR 390-1<br>and Tyler Lang, 14 CR 390-2 | $200,000.00 | $200,000.00 | Robert R. |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## STATUTE AT ISSUE

**18 U.S.C. § 43 – Force, violence, and threats involving animal enterprises**

**(a) Offense.**--Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce—

    **(1)** for the purpose of damaging or interfering with the operations of an animal enterprise; and

    **(2)** in connection with such purpose--

        **(A)** intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise;

        **(B)** intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family (as defined in section 115) of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or

        **(C)** conspires or attempts to do so;

shall be punished as provided for in subsection (b).

**(b) Penalties.**--The punishment for a violation of section (a) or an attempt or conspiracy to violate subsection (a) shall be--

    **(1)** a fine under this title or imprisonment not more than 1 year, or both, if the offense does not instill in another the reasonable fear of serious bodily injury or death and--

        **(A)** the offense results in no economic damage or bodily injury; or

        **(B)** the offense results in economic damage that does not exceed $10,000;

    **(2)** a fine under this title or imprisonment for not more than 5 years, or both, if no bodily injury occurs and—

        **(A)** the offense results in economic damage exceeding $10,000 but not exceeding $100,000; or

**(B)** the offense instills in another the reasonable fear of serious bodily injury or death;

**(3)** a fine under this title or imprisonment for not more than 10 years, or both, if—

    **(A)** the offense results in economic damage exceeding $100,000; or

    **(B)** the offense results in substantial bodily injury to another individual;

**(4)** a fine under this title or imprisonment for not more than 20 years, or both, if—

    **(A)** the offense results in serious bodily injury to another individual; or

    **(B)** the offense results in economic damage exceeding $1,000,000; and

**(5)** imprisonment for life or for any terms of years, a fine under this title, or both, if the offense results in death of another individual.

**(c) Restitution.**--An order of restitution under section 3663 or 3663A of this title with respect to a violation of this section may also include restitution—

    **(1)** for the reasonable cost of repeating any experimentation that was interrupted or invalidated as a result of the offense;

    **(2)** for the loss of food production or farm income reasonably attributable to the offense; and

    **(3)** for any other economic damage, including any losses or costs caused by economic disruption, resulting from the offense.

**(d) Definitions.**--As used in this section—

    **(1)** the term "animal enterprise" means—

        **(A)** a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;

        **(B)** a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or

        **(C)** any fair or similar event intended to advance agricultural arts and sciences;

**(2)** the term "course of conduct" means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose;

**(3)** the term "economic damage" —

    **(A)** means the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise; but

    **(B)** does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise;

**(4)** the term "serious bodily injury" means—

    **(A)** injury posing a substantial risk of death;

    **(B)** extreme physical pain;

    **(C)** protracted and obvious disfigurement; or

    **(D)** protracted loss or impairment of the function of a bodily member, organ, or mental faculty; and

**(5)** the term "substantial bodily injury" means—

    **(A)** deep cuts and serious burns or abrasions;

    **(B)** short-term or nonobvious disfigurement;

    **(C)** fractured or dislocated bones, or torn members of the body;

    **(D)** significant physical pain;

    **(E)** illness;

    **(F)** short-term loss or impairment of the function of a bodily member, organ, or mental faculty; or

    **(G)** any other significant injury to the body.

**(e) Rules of construction.**--Nothing in this section shall be construed—

   **(1)** to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution;

   **(2)** to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference; or

   **(3)** to provide exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this action, or to preempt State or local laws that may provide such penalties or remedies.